**TOYOTA LANDSCAPING COMPANY, INC., Plaintiff–Appellant,**

v.

**SOUTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS; Affiliated Laborers Local Union 652; Affiliated Laborers Local Union 300; Affiliated Laborers Local Union 1082, et al., Defendants–Appellees.**

Nos. 91–55721, 91–55986.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1993.

Decided Dec. 1, 1993.

Scott A. Wilson, Littler, Mendelson, Fastiff & Tichy, San Diego, CA, for plaintiff-appellant.

Alexander B. Cvitan, Reich, Adell & Crost, Los Angeles, CA, for defendants-appellees.

Before: FLETCHER, PREGERSON, and NORRIS, Circuit Judges.

PREGERSON, Circuit Judge:

Toyota Landscaping Company, Inc. ("Toyota Landscaping") appeals the district court's judgment in favor of the Southern California District Council of Laborers and three laborers local unions (collectively referred to as "Laborers Union"). Toyota Landscaping contended that a subcontracting clause in the Laborers Union's collective bargaining agreement with associations of Southern California general contractors resulted from a conspiracy with Toyota Landscaping's competitors, in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2. A jury rendered a verdict adverse to Toyota Landscaping on its antitrust claim. Toyota Landscaping also contended that the subcontracting clause violated the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186. The court, sitting without a jury, ruled adversely to Toyota Landscaping on its LMRA claim. Toyota Landscaping appeals only the ruling on its LMRA claim. We have jurisdiction under 28 U.S.C. § 1291. We affirm the district court's ruling that Toyota Landscaping lacked standing to assert the LMRA claim.

## BACKGROUND

In 1986, Toyota Landscaping provided landscape services for construction projects. Laborers Union was signatory to a collective bargaining agreement with several multi-employer associations. The agreement, called the Southern California Master Labor Agreement ("the MLA"), was effective July 1, 1986 through June 15, 1988, and covered all construction work, including landscaping, within Laborers Union's jurisdiction. In relevant part, the MLA provided:

> D.  Neither the contractor nor any of his subcontractors shall subcontract any work ... coming within the jurisdiction of the Union ... or Teamsters except to a person, firm or corporation party to an appropriate current labor agreement with the Union or ... [the] Teamsters.
>
> 1.  Laborers' Landscape work shall be performed, whether by employees of the Contractor or by a subcontractor, under an appropriate current labor agreement as mentioned above, and in no event at less than the sum of the wages and trust fund contributions contained in this Agreement.
>
> 2.  *The Contractor shall pay to the Union as damages,* any difference between the wages paid to laborers and wage rate of this Agreement, *and to the Laborers' Trust Fund as damages,* the difference between fringe benefit contributions paid on behalf of laborers and the contribution rate of this Agreement.  These *damages* shall be recoverable through the grievance procedure.

MLA, Art. V, ¶ D.1., and 2.  (emphasis added).

When a general contractor, signatory to the MLA, hired Toyota Landscaping, Toyota provided its employees with lower wages and fewer benefits than those set by the MLA. Toyota Landscaping did so pursuant to the terms of a collective bargaining agreement with the Teamsters Union.  The MLA permitted a general contractor to subcontract work to a signatory of a current labor agreement with the Teamsters Union.  But the subcontracting clause required that wages and trust fund contributions be paid in an amount "in no event at less than the sum of [those] contained in [the MLA]."  MLA

¶ D.1.  If not, then the MLA required the general contractor to pay any difference to the Laborers Union as damages and to the Laborers' Trust Fund as damages.  Damages were recoverable through the grievance procedure.

The Laborers Union reacted to Toyota Landscaping's employment practices by initiating the grievance procedure against certain general contractors that used Toyota Landscaping's services.  A grievance brought against PCL, Inc., a general contractor, resulted in the payment of money damages by PCL, Inc. to the Laborers Union based on a settlement regarding wage payments.

Toyota Landscaping responded to the settlement by filing an action against the Laborers Union challenging the validity of the subcontracting clause under the Sherman Antitrust Act and under the Labor Management Relations Act ("LMRA").  A jury tried Toyota Landscaping's antitrust claim and rendered a verdict in favor of Laborers Union.  Toyota Landscaping does not appeal the judgment entered on the jury's verdict. The district court, sitting without a jury, dismissed Toyota Landscaping's LMRA claim for lack of standing.  Toyota Landscaping appeals the district court's decision.

## ANALYSIS

■  We review de novo the district court's decision to dismiss Toyota Landscaping's LMRA claim for lack of standing.  *Ellis v. City of La Mesa,* 990 F.2d 1518, 1523 (9th Cir.1993) (Standing to sue in federal court is a question of law reviewed de novo.).

### 1.  *Standing to Bring a Claim Under LMRA § 302(a)*

■  The district court correctly found that Toyota Landscaping lacked standing to bring a claim under LMRA § 302(a).  The district court reasoned, and we agree, that the interests that Toyota Landscaping seeks to protect are not within the "zone of interests" to be protected or regulated by § 302(a).

LMRA provides, in relevant part: "It shall be unlawful for any employer ... to pay, lend, or deliver, or to agree to pay, lend, or

deliver, any money or other thing of value ... to any labor organization...." 29 U.S.C. § 186(a)(2) [LMRA § 302(a)(2)]. Furthermore, "[i]t shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of money or other thing of value prohibited by [§ 302(a)]." *Id.* § 186(b)(1) [LMRA § 302(b)(1)].[1] However, these prohibitions do *not* apply "with respect to the payment or delivery of money or other thing[s] of value in satisfaction of a judgment ... or in compromise, adjustment, *settlement,* or release of any claim, complaint, *grievance,* or dispute in the absence of fraud or duress...." *Id.* § 186(c)(2) [LMRA § 302(c)(2)] (emphasis added).

The district court correctly found that PCL, Inc. is an "employer," and the Laborers Union is a "labor organization" within LMRA § 302(a). Toyota Landscaping contends that the MLA provisions in Article V, § D.1. and 2. constitute an agreement by employers to pay money to a labor organization, in violation of LMRA § 302(a), as well as a request or demand for money by the Laborers Union, in violation of LMRA § 302(b). Because Toyota Landscaping lacks standing, we need not address the merits of its § 302 claims.

LMRA grants district court jurisdiction to restrain violations of § 302(a). 29 U.S.C. § 186(e) [LMRA § 302(e)].[2] However, the statute does not specify which persons are entitled to bring suit. LMRA does not expressly authorize an injunction action by a party such as Toyota Landscaping.

█ To find standing in the absence of explicit statutory authorization, we must determine whether the interest that Toyota Landscaping seeks to protect is arguably within the zone of interests to be protected or regulated by the statute. *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp,* 397

U.S. 150, 154, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). This test focuses on the following factors: (1) whether implying a remedy for Toyota Landscaping is consistent with the underlying purpose of the legislative scheme; (2) whether .the Congress intended to create or deny a remedy; and (3) whether Toyota Landscaping is a member of the class for whose benefit the. statute was enacted. *See Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975). The second factor is not at issue in this case, because Congress clearly intended to create a judicial remedy. 29 U.S.C. § 186(e) [LMRA § 302(e)]. We address the two other factors.

█ To apply the first factor, whether implying a remedy is consistent with the legislative scheme, we start by analyzing the broad purposes and policy of LMRA. Under the LMRA, Congress sought "to promote the full flow of commerce, ... to provide orderly and peaceful procedures for preventing [employees and employers from interfering] with the legitimate rights of [each] other, to protect the rights of individual employees in their relations with labor organizations," and to proscribe labor and management practices affecting commerce that jeopardize the general welfare. 29 U.S.C. § 141(b) [LMRA § 1(b)]. LMRA is therefore aimed at preventing unfair labor practices that cause dislocations among employees and employers and interfere with the normal flow of commerce. *See id.*

█ In particular, Congress enacted § 302 to attack practices that were "inimical to the integrity of the collective bargaining process." *Arroyo v. United States,* 359 U.S. 419, 421, 79 S.Ct. 864, 868, 3 L.Ed.2d 915 (1959) (clarifying the scope of § 302). The targeted, unfair practices include bribery by employers during collective bargaining, extortion by employee representatives, and

---

1. Just as the parties and the district court have done, we focus the following discussion on LMRA § 302(a). Sections 302(a) and 302(b) prohibit the same type of transaction from different but complementary perspectives: § 302(a) prohibits employers from making money payments to labor organizations, and § 302(b) prohibits persons, including labor organizations, from requesting or accepting money payments. If Toyo-

ta Landscaping lacks standing to bring an action under § 302(a), it also lacks standing to bring an action under § 302(b).

2. "The district courts of the United States ... shall have jurisdiction, for cause shown ... to restrain violations of this section...." 29 U.S.C. § 186(e) [LMRA § 302(e)].

abuse of power by union officers who have sole control over welfare funds. *Id.* at 425–26, 79 S.Ct. at 868–69; *NLRB v. United Bhd. of Carpenters,* 531 F.2d 424, 427 (9th Cir. 1976) (§ 302 does not apply to a money payment to remedy union discrimination, because "[t]he mischief which Section 302 was designed to eliminate is clearly not present ..., and there is no need to invoke the safeguards of this statute").

We reject Toyota Landscaping's arguments that its interest is within the § 302 goals of fostering both the free flow of commerce and collective bargaining. First, Toyota Landscaping's interest in the free flow of commerce is unrelated to the targeted, unfair labor practices. Toyota Landscaping alleges that the MLA provision causes signatory general contractors to refuse to hire Toyota Landscaping out of fear of liability to the Laborers Union. Toyota Landscaping's interest is to remove a disincentive for general contractors to employ its services. Even though this asserted interest involves the free flow of commerce, it has nothing to do with protecting the integrity of collective bargaining or other employer-employee relations from unfair labor practices. Nor would recognizing Toyota Landscaping's interest in any way further § 302's goal of fair collective bargaining. *See Cort,* 422 U.S. at 85, 95 S.Ct. at 2088 (requested remedy must aid in accomplishing statutory goals).

Second, Toyota Landscaping's interest is contrary to the § 302 goal of fostering collective bargaining. The signatory general contractors legitimately agreed to maintain the MLA wage and fringe benefit rates. The disputed money payments served to *enforce* their collective bargaining agreement, not to taint the bargaining process. Because Congress intended to attack only those payments that could *prejudice* collective bargaining, the disputed payments are outside § 302's zone of interests.

By adopting § 302 to safeguard the bargaining process from unfair interference, Congress sought to contribute to industrial peace. Toyota Landscaping was a signatory to a labor agreement with the Teamsters Union. The Teamsters Union was not signatory to the MLA.[3] Nonetheless, Toyota Landscaping now seeks to undermine the collective bargaining process that produced the MLA and employees' rights to negotiated wage rates. Toyota Landscaping's action amounts to collateral interference with the MLA, instead of a vehicle to remove unfairness from the bargaining process. We cannot allow employers who refuse to join a multi-employer association for collective bargaining to bring suit when the contracting parties adhere to their own agreement. We find that implying a remedy for Toyota Landscaping is not consistent with the purposes of § 302.

■ Finally, Toyota Landscaping is not a member of the statutorily-protected class. Standing under LMRA § 302(a) does not extend to *every* employer who alleges an interest in the free flow of commerce. Proper employer plaintiffs are those who are directly concerned with the disputed funds such that they risk criminal liability for any § 302(a) violation.

The only court that has addressed § 302 standing in this Circuit chose to look at the directness of the plaintiff's involvement in the disputed funds, as well as the plaintiff's risk of § 302(a) liability. *Hibernia Bank v. Int'l Bhd. of Teamsters,* 411 F.Supp. 478 (N.D.Cal.1976) (dismissing for lack of standing a bank's action to recover overdrafts on accounts for union trust funds that the bank serviced). The court stated that " '[t]he right to test the legality of employer contributions ... is available to employees and employers, as well as to such other parties ... *directly concerned* with the payment, acceptance, and administration of welfare funds.' " *Id.* at 484 (quoting and following *Employing Plasterers' Ass'n v. Journeymen Plasterers' Protective and Benevolent Society, Local No. 5,* 279 F.2d 92, 99 (7th Cir.1960) (enumerating proper plaintiffs as employers, employees, employee representatives, and trustees, all of whom likely participate in alleged violations

---

3. As a signatory to a labor agreement with the Teamsters Union, Toyota Landscaping was not precluded, under the terms of MLA ¶ D, from entering into subcontract agreements with contractors that were signatory to the MLA.

and themselves risk criminal sanctions)) (emphasis omitted).

In this case, Toyota Landscaping was neither a party to the MLA, nor an employee benefitted by the MLA, nor in any way involved with the administration of funds collected pursuant to the MLA. Toyota Landscaping is an employer, but we think *Hibernia* should not be read to mean that *every* employer has standing to bring suit. It is not enough that Toyota Landscaping lost money due to the MLA penalty provision. Toyota Landscaping is not directly concerned with the payment of money to Laborers Union; its concern is collateral to the agreement and the valid collective bargaining process in this case. Because Toyota Landscaping is not a member of the protected class, and because implying a judicial remedy would be inconsistent with the statutory purposes, Toyota Landscaping lacks standing to bring this suit under § 302(a) of the LMRA.[4]

### 2. *Other Issues On Appeal*

Toyota Landscaping urges us to find that the subcontracting clause violates LMRA § 302(a), and that by violating this section, the clause per se violates the Sherman Antitrust Act § 1. Because we affirm the district court's finding that Toyota Landscaping lacks standing to enforce LMRA § 302(a), we do not address these contentions.

AFFIRMED.

---

4. Even if Toyota Landscaping had standing to bring suit under LMRA § 302(a), it still would not succeed, because the prohibition against payments from employers to labor organizations does not apply to payments "in satisfaction of a judgment" or "in settlement ... of any claim, complaint, grievance, or dispute in the absence of fraud or duress...." 29 U.S.C. § 186(c)(2) [LMRA § 302(c)(2)].