**Byron RODERICK, d/b/a We Cash It, Plaintiff,**

v.

**CITY OF GULFPORT, MISSISSIPPI; Ed Twomey, Gulfport, Mississippi Detective, Individually and in His Official Capacity; George H. Payne, Jr., Gulfport, Mississippi Chief of Police, Individually and in His Official Capacity; and Leslie Staehle, Individually, Defendants.**

**No. 1:93CV568BRR.**

United States District Court, S.D. Mississippi, Southern Division.

Aug. 9, 2000.

---

Earl L. Denham, Ralph Preston King, II, Denham & King, PLLC, Ocean

Springs, MS, Hal Templeton Fowlkes, Jr., Miller & Fowlkes, Biloxi, MS, for Byron Roderick dba We Cash It for plaintiff.

Jeffrey S. Bruni, City of Gulfport, Walter Wesley Teel, Meadows, Riley, Koenenn & Teel, Gulfport, MS, Peter W. Cleveland, Office of Attorney General, Jackson, MS, Harry P. Hewes, Harry P. Hewes, Attorney, Joseph R. Meadows, Karen Jobe Young, Meadows, Riley, Koenenn & Teel, Gulfport, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

BRAMLETTE, District Judge.

This matter is before the Court on Motion to Dismiss [docket no. 78–1] and Motion to Strike Plaintiff's Rule 7(a) Reply [docket no. 65–1] filed by the City of Gulfport, George H. Payne, Jr. and Ed Twomey; and Motion to Dismiss Amended Complaint [docket no. 66–1] and Motion to Strike Motion Response by Byron Roderick [docket no. 82–1] filed by defendant Leslie Staehle. Having carefully considered the motions, briefs, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds as follows:

## I. SUMMARY OF FACTS

The Amended Complaint in this case sets out the following course of events: In 1993, the plaintiff, Byron Roderick, opened a check cashing enterprise known as "We Cash It" in Gulfport, Mississippi. At that time, the check-cashing business was not regulated in Mississippi, and legislation regulating the check cashing industry was apparently in the works. The plaintiff claims that defendant Leslie Staehle Lee [hereinafter "Staehle"], Special Assistant Attorney General, "was intimately involved in negotiations, conferences and legislative committee meetings regarding proposed legislation to regulate check-cashing businesses in Mississippi," and represented to him that the check-cashing business was legal in Mississippi.[1] After "We Cash It" opened for business, it was investigated by the Gulfport Police Department for possible violation of Mississippi's Racketeer Influenced and Corrupt Organization ["RICO"] Act[2] dealing with usurious loans, *i.e.*, loans made at exorbitant rates of interest. The plaintiff claims that this investigation was based on testimony provided by defendant Staehle.

On or about October 22, 1993, several officers of the Gulfport Police Department executed a warrant for the search of the premises of "We Cash It." The plaintiff claims that the search warrant was based on Staehle's interpretation of the RICO statute in Mississippi. The police seized several items, including "all checks, business documents, video tape machines, calculators, telephones, filing cabinets" and the like. The police also posted a note on the plaintiff's door instructing customers to call the police department. According to the plaintiff, the police informed customers who called that the plaintiff's business was closed. Roderick immediately retained counsel, who telephoned the following individuals in the weeks that followed in an attempt to secure the return of the seized items: Harry Hewes, Gulfport City Attorney; Cono Caranna, Harrison County District Attorney; and Jim Halliday, Gulfport City Attorney. In addition, the plaintiff avers that his attorney placed several calls to Steve Simpson, Harrison County Assistant District Attorney, which were not returned.

---

**1.** (Pl.'s Compl. ¶ 14.)

**2.** *See* MISS. CODE ANN. § 97–43–1 *et seq.*

On Tuesday, November 9, 1993, all items seized in the search other than the numerous checks that are the subject matter of the present controversy were returned to the plaintiff's business. Roderick maintains that the checks have an aggregate value of $47,000. On or about November 26, 1993, Roderick filed the instant action in this Court. On August 19, 1994, criminal proceedings were commenced against Roderick for violation of Mississippi's RICO Act relating to allegedly usurious loan practices. Thereafter, the instant case was placed on the inactive docket pending final determination of the criminal proceedings against Roderick. Roderick filed a Motion to Quash and Dismiss Indictments on May 30, 1995. On June 16, 1995, the trial judge granted Roderick's motion, holding that the Mississippi RICO statute is unconstitutionally vague when applied to claims of usury. The State appealed the decision to the Mississippi Supreme Court, which affirmed the Circuit Court's grant of Roderick's Motion to Quash and Dismiss on the grounds that the application of the RICO statute to usury would violate due process by criminalizing conduct without fair notice or warning.[3] The State filed a petition for certiorari with the U.S. Supreme Court, which was denied on June 15, 1998.[4]

On July 15, 1998, the plaintiff's counsel reiterated his demand for the return of the checks. On July 24, 1998, defendant Staehle filed a Motion for Disposition of Evidence with the Circuit Court of Harrison County, requesting permission to return the plaintiff's property. The City of Gulfport filed a Motion to Intervene and for Protective Order, seeking to preclude the release of the plaintiff's property until the final disposition of the instant action. The court granted Staehle's motion, denied the City of Gulfport's motion and directed that the checks be returned to Roderick. According to the plaintiff, the checks have yet to be returned.

Roderick filed a Motion to Reinstate Case and a Motion to Amend Complaint, both of which were granted by Order entered July 26, 1999. On July 30, 1999, the Amended Complaint was filed. The Amended Complaint adds Leslie Staehle, formerly a non-party, as a party defendant. Roderick claims that the defendants' seizure and retention of the checks has forced him to close his business. The plaintiff seeks actual and compensatory damages of $2,500,000 for lost profits, loss of reputation, lost past, present and future income, libel and slander, litigation costs and attorney's fees and interest, as well as punitive damages of $2,500,000.[5]

## II. MOTIONS TO DISMISS

A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A & M University System*, 117 F.3d 242, 247 (5th Cir.1997); *accord Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir.1982). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the original complaint must be taken as true. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996) (citing *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir.1992)); *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir.1986). "Although [the Court] must accept as true the well-pleaded allegations of a complaint" on motion to

---

**3.** *See State v. Roderick,* 704 So.2d 49 (Miss. 1997).

**4.** *See Mississippi v. Roderick,* 524 U.S. 926, 118 S.Ct. 2319, 141 L.Ed.2d 694 (1998).

**5.** (Pl.'s Am. Compl. at 9–10.)

dismiss "for failure to state a claim, [the Court may] not accept as true conclusionary allegations in the complaint." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982). A district court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Blackburn v. Marshall*, 42 F.3d 925, 931 (5th Cir.1995). The Fifth Circuit defines this strict standard by stating that "[t]he question ... is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Lowrey*, 117 F.3d at 247 (citing Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 601 (1969)). In addition, the Court is not permitted to look beyond the pleadings in the course of ruling on a motion to dismiss. *See Baker*, 75 F.3d at 196.

## A. Plaintiff's Allegations of Constitutional Violations

The plaintiff claims a violation of his rights under the First, Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution, and alleges civil conspiracy and violation of Sections 14, 24 and 25 of Article III of the Mississippi State Constitution. The Court will examine these allegations in turn.

### 1. First and Fifth Amendments

■ The plaintiff alleges a violation of his First Amendment right to assembly and association under the U.S. Constitution, but the Complaint fails to allege any facts to support a claim that he was prohibited from exercising these rights. The plaintiff has also alleged a violation of his rights under the Fifth Amendment; how-

ever, the Fifth Amendment applies only to the federal government and its officers, and is therefore inapplicable to the state actors in this case. *See Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir.2000) ("The Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor.") (citing *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir.1996)). Therefore, the defendants' motions to dismiss are well taken as to the plaintiff's First and Fifth Amendment claims.

### 2. Fourth Amendment

Roderick claims that the search and seizure conducted by the Gulfport Police Department at the premises of "We Cash It" violated his Fourth Amendment right to be free from unreasonable search and seizure. Defendants Payne, Twomey and Staehle contend that they are insulated from liability due to the fact that the search and seizure occurred pursuant to a valid search warrant issued by a Municipal Court Judge. In support of their contention, the defendants cite the following language of *Smith v. Gonzales:* "[I]f the facts supporting an arrest are put before an intermediary such as a magistrate or grand jury, the intermediary's decision to issue a warrant or return an indictment breaks the causal chain and insulates the initiating party." 670 F.2d 522, 526 (5th Cir.1982); *accord Metro Charities, Inc. v. Moore*, 748 F.Supp. 1156, 1165 (S.D.Miss.1990).

This statement, however, was qualified in *Peters v. City of Biloxi*, wherein the court stated that " 'the mere presentation of the warrant application to the magistrate does not automatically relieve the individual officer from liability.' The chain is broken 'only where all the facts are presented to the magistrate, where the malicious motive of the law enforcement officials does not lead them to withhold

any relevant information.' Said another way, 'any misdirection of the magistrate ... by omission or commission' will serve to taint the deliberations of the independent intermediary and keep chain of causation intact." 57 F.Supp.2d 366, 371 (S.D.Miss.1999).

In this case, the search at issue was made pursuant to a warrant issued by a Municipal Court Judge, and the Amended Complaint contains no allegation that any defendant omitted or misrepresented any information in the procurement of the warrant. In the plaintiff's Reply Brief, he notes the language of the search warrant authorizing search for certain enumerated items and "instrumentalities used to facilitate the collection of unlawful debts," [6] and argues that, because the Mississippi Supreme Court ultimately concluded that the plaintiff had not committed a crime, the phrase "collection of unlawful debts" was an inaccurate characterization and the warrant thereby improper. As mentioned above, the sufficiency of the warrant was determined by the Municipal Court Judge, an independent intermediary, who determined that it was legally sufficient. Therefore, the causal link between the defendants' alleged acts and the search of "We Cash It" is severed, and the defendants are insulated from liability with regard to the legal sufficiency of the warrant.

As for the execution of the warrant, it is established in this Circuit that "[l]aw enforcement officers having a good faith and reasonable belief in the validity of the search warrant may nonetheless incur liability under [§ 1983] if the warrant is executed in an unreasonable manner." *Duncan v. Barnes*, 592 F.2d 1336, 1338 (5th Cir.1979). According to the standard adopted by the Fifth Circuit, an officer who executes a search warrant in a reasonable, good-faith manner is not liable under § 1983 for execution of the warrant, even if the judge or magistrate who issued the warrant did so in error. *See Scott v. Dollahite*, 54 F.R.D. 430, 433 (N.D.Miss.1972) (citations omitted).

The plaintiff states in his Complaint that the officers executing the search warrant "meticulously went through everything on the premises, including a fast food lunch bag containing a hamburger. Except for a few large pieces of furniture, the police seized nearly everything on the premises, including all checks, business documents, video tape machines, calculators, telephones, filing cabinets, and even the hamburger, causing a total shutdown of the business," and further alleges that "[t]he destruction of the business was the obvious intent of the search." [7] The plaintiff's comment regarding the intent of the search is a conclusory allegation, which the Court may not consider. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982). In addition, such a reference to the officer's subjective intent, as opposed to his objective conduct, is irrelevant to whether a Fourth Amendment violation occurred. *See United States v. Causey*, 834 F.2d 1179, 1184 (5th Cir.1987) ("Whether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not on the officer's actual state of mind at the time the challenged action was taken.") (quoting *Scott v. United States*, 436 U.S. 128, 136, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)).

---

**6.** (Pl.'s Br. Supp. Reply to Mot. Gulfport et al. Dismiss at 8.)

**7.** (Pl.'s Am. Compl. ¶ 15.)

■ While the remaining allegations of the plaintiff recite an extensive catalog of items seized, Roderick does not allege that the defendants exceeded the authority of the warrant, that the items seized were not "instrumentalities used to facilitate the collection of unlawful debts"[8] as determined by the warrant, or that the execution of the warrant was unreasonable. Thus, even with the plaintiff's allegations accepted as true and all ambiguities weighed in his favor, the Amended Complaint fails to state a claim for unreasonable execution of the search warrant. Therefore, the Amended Complaint fails to state a claim under the Fourth Amendment for the seizure of Roderick's property from "We Cash It" on October 22, 1993, and the defendants' motions to dismiss are well

taken as to Roderick's Fourth Amendment claims relating to that seizure.[9]

### 3. Fourteenth Amendment

The Fourteenth Amendment states, in pertinent part:

> No State shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV, § 1; *see also Loving v. Virginia*, 388 U.S. 1, 2, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). The plaintiff raises two claims under the Fourteenth Amendment to the U.S. Constitution: (1) deprivation of property without due process; and (2) denial of equal protection.

---

**8.** (Pl.'s Br. Supp. Reply to Mot. Gulfport et al. Dismiss at 8.)

**9.** It is unclear whether the plaintiff has alleged that the defendants violated his rights under the Fourth Amendment by their continued retention of his property following the conclusion of the criminal case against him, as the Amended Complaint states in broad terms that Roderick's "Fourth Amendment right to protection against unreasonable search and seizure, and to security in his papers and effects, has been violated by the Defendants' actions under color of state law." (Pl.'s Am. Compl. ¶ 31(B).) It appears that the Fifth Circuit has not specifically addressed the issue of whether continued retention of property seized pursuant to a criminal investigation constitutes a Fourth Amendment violation. However, the U.S. Supreme Court has stated that a property seizure takes place when " 'there is some meaningful interference with an individual's possessory interest in that property.'" *Soldal v. Cook County*, 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)). It would appear that the continued retention of property falls within the ambit of this broad definition of "seizure." Indeed, a district court in the Sixth Circuit, relying on two unpublished Sixth Circuit opinions, held that continued retention of property seized pursuant to a criminal investigation consti-

tutes a "seizure" and may give rise to Fourth Amendment claims, even if the initial seizure of the property was lawful and proper. *See Fox v. Van Oosterum*, 987 F.Supp. 597, 608 (W.D.Mich.1997). Nonetheless, the *Fox* court held that the defendants were entitled to qualified immunity because, in light of the Sixth Circuit case law at the time of the alleged violation, the plaintiff's Fourth Amendment right was not clearly established when the alleged "seizure" occurred. Therefore, the court dismissed the plaintiff's Fourth Amendment claims dealing with continued retention of formerly seized property. *See id.* at 109, 104 S.Ct. 1652. Because any Fourth Amendment right the plaintiff may have in this context is, to date, not clearly established in this Circuit, the individual capacity claims against defendants Payne, Twomey and Staehle that may exist under the Fourth Amendment for the continued retention of the plaintiff's property must be dismissed on qualified immunity grounds. For the reasons provided in Section II(B)(1) of this Opinion, the plaintiff's Fourth Amendment claims against the City of Gulfport and against defendants Payne and Twomey in their official capacities dealing with the continued retention of Roderick's property must also be dismissed, because Roderick has failed to allege a policy or custom with respect to these claims.

■ The only factual allegation made by the plaintiff that could possibly relate to an equal protection violation is his claim that, "[t]hroughout th[e] period of time" in 1993 when the plaintiff's premises were searched and his property retained by the Gulfport Police Department, "Defendants were investigating similar check-cashing businesses without closing them."[10] This allegation is, by itself, patently insufficient to state an equal protection claim. Therefore, the defendants' motions to dismiss are well taken as to the plaintiff's claims for violation of his rights under the equal protection clause of the Fourteenth Amendment.

With regard to the plaintiff's claim that he was deprived of property without due process, the plaintiff alleges that the police seized his property and have to this date failed to return it, despite the fact that the criminal prosecution for which it was seized has long since reached its final conclusion. The plaintiff further alleges that he has made several attempts to recover this property, but to no avail. As stated by the court in *Hahn v. City of Kenner*, "[w]here the government permanently deprives plaintiff of his even lawfully seized personal belongings, plaintiff's due process property interest is implicated, and a Section 1983 claim arises." 984 F.Supp. 424, 430 (E.D.La.1997) (citing *Matthias v. Bingley*, 906 F.2d 1047, 1050 (5th Cir. 1990), *modified on other grounds* 915 F.2d 946 (5th Cir.1990)).

■ As pointed out by defendant Staehle in her Motion to Dismiss, a plaintiff who has suffered a deprivation of a protectable interest due to the random and unauthorized act of a state actor does not suffer a violation of his procedural due process rights if there are adequate state remedies for the deprivation. *See Parratt v. Taylor*, 451 U.S. 527, 543–44, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *see also Davis v. Bayless*, 70 F.3d 367, 375 (5th Cir.1995). In *Parratt v. Taylor*, the U.S. Supreme Court noted that to recognize due process claims under § 1983 where adequate state remedies are extant " 'would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States.' " *Id.* at 544, 101 S.Ct. 1908. This doctrine is inapplicable to the plaintiff's due process claims for several reasons. First, the Court is not satisfied that the acts in this case were random and unauthorized. To the contrary, the City of Gulfport's opposition to Staehle's Motion for Disposition of Evidence indicates that the retention of Roderick's property was anything but a random act. Furthermore, the Court is not satisfied that the remedies available to Roderick under Mississippi state law were, in fact, adequate.

While most states have enacted statutes to govern the disposition of property seized pursuant to a search warrant, no such statutes exist in Mississippi. *See Newman v. Stuart*, 597 So.2d 609, 614 (Miss.1992). However, the Mississippi Supreme Court has summarized the procedure for the return of property seized under authority of a warrant as follows:

> Property seized under a search warrant is an exercise of the police power of the state, and the state has the authority to keep and maintain control of the property until it is no longer needed in a criminal prosecution or investigation.... While the property is thus seized, it is under the lawful custody of the magistrate who issued the warrant, or the court having jurisdiction of the

---

10. (Pl.'s Am. Compl. at 5.)

criminal prosecution in which the property is material evidence.... When seized property is no longer needed for criminal prosecution by the state, it should be restored to its lawful owner. If there is no conflict as to ownership, the court having custody of the property ordinarily directs its release to the owner. [The defendant], therefore, had no authority on its own in this case to deliver the [property] to [the plaintiff] absent court approval .... The appropriate procedure would have been for [the defendant], once the [property] served no further purpose in a criminal investigation or prosecution, to make a motion in the justice court for authority to release it to [the plaintiff] .... If there was no conflict or objection to the motion, it would have been proper for the justice court to release it to its lawful owner ...

*Id.* at 615–616. As previously noted, Staehle filed a Motion for Disposition of Evidence on or about July 24, 1998 in the Circuit Court of Harrison County, Mississippi, First Judicial District, requesting a court order authorizing return of the checks in accordance with the mandates of the *Newman* case.[11] The City of Gulfport filed a Motion to Intervene and for Protective Order, seeking to prevent the return of these items due to the pendency of the instant civil proceeding.[12] On or about January 25, 1999, the court granted Staehle's motion, stating that, "[b]ecause the above quoted pronouncement by the Supreme Court [in *Newman* ] indicates a court order may be necessary for release of the items seized pursuant to the search warrant in this case, the Court hereby grants State's motion for disposition of

evidence, and directs the Gulfport Police Department to release the aforementioned seized items to the owners." [13] The *Newman* case is instructive with respect to the events in this case in several respects.

First, the court's statement that "[w]hen seized property is no longer needed for criminal prosecution by the state, it should be restored to its lawful owner," indicates that the defendants had the right to lawfully possess the property until the criminal prosecution against the plaintiff reached its final conclusion through the U.S. Supreme Court's denial of certiorari on June 15, 1998. Second, according to *Newman,* the defendants in this case were required to obtain a court order authorizing return of the property before they were permitted to return it to the plaintiff. Therefore, the actions of Staehle in filing the Motion for Disposition of Evidence prior to returning the checks were proper, and a necessary prerequisite to the property's return.

■ Third, and equally as important in this case, once Staehle obtained a court order directing the return of the evidence in this case, there existed no legal basis for the continued retention of the plaintiff's checks. Nonetheless, the plaintiff alleges that, despite the existence of the court order compelling the return of the items seized, they have not been returned. Fourth, in light of the sequence of events described above, the Court is not satisfied that adequate state remedies exist in this case which were not pursued by the plaintiff. As a result, the plaintiff's claims are not barred by the alleged existence of adequate state remedies.

11. (Pl.'s Am. Compl. ¶ 26; Pl.'s Reply Staehle Mot. Dismiss, Ex. X. ¶ IV.)

12. (Pl.'s Am. Compl. ¶ 26; Pl.'s Reply Staehle Mot. Dismiss, Ex. Z.)

13. (Pl.'s Reply Staehle Mot. Dismiss, Ex. AA at 2.)

For these reasons, the Court finds that Roderick has alleged a violation of his due process rights under the Fourteenth Amendment to the U.S. Constitution, and of Article III, Section 14 of the Mississippi State Constitution, to be discussed in the following section.

### 4. State Constitutional Claims

In addition to his claims that his rights under the U.S. Constitution were violated, the plaintiff alleges violations of his rights under the Mississippi State Constitution, specifically Section 14 (due process)[14], Section 24 (remedy for injury in open court)[15], and Section 25 (access to courts)[16]. Sections 24 and 25 appear to have no bearing in the premises, as the plaintiff has not alleged that he has been denied a remedy in open court or that he has been denied access to the courts. The plaintiff's claims under Sections 24 and 25 shall therefore be dismissed. Section 14, pertaining to due process rights, is nearly identical to the due process clause of the U.S. Constitution, and the Court's analysis with respect to this provision of the federal constitution is equally applicable with respect to this corresponding provision of the Mississippi Constitution. However, redress for the alleged violations of the Mississippi State Constitution may not be had under § 1983, but only under Mississippi state law. Therefore, the plaintiff's claims relating to the violation of his due process rights under the Mississippi State Constitution will be addressed separately from Roderick's § 1983 claims for denial of due process.

**14.** "No person shall be deprived of life, liberty, or property except by due process of law." Miss. Const. art. III, § 14.

**15.** "All courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice

### 5. Civil Conspiracy Claims

Roderick has also alleged that the defendants participated in a civil conspiracy to deny the plaintiff his rights under the constitutions of the United States and the State of Mississippi. The defendants' main arguments regarding civil conspiracy have intimated that, because a civil conspiracy cannot exist absent an underlying constitutional violation, the alleged failure of the plaintiff to prove an underlying constitutional violation is fatal to his civil conspiracy claims. As previously discussed, the plaintiff has stated a claim for violation of his due process rights. Therefore, the Court cannot say that Roderick has no viable claim for civil conspiracy, and the motions to dismiss are not well taken as to the civil conspiracy claims.

## B. Section 1983 Claims

Congress enacted 42 U.S.C. § 1983 as "a species of tort liability in favor of persons who are deprived of rights, privileges, or immunities secured to them by the Constitution." *Memphis Community Sch. Dist. v. Stachura,* 477 U.S. 299, 305–06, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall

shall be administered without sale, denial, or delay." Miss. Const. art. III, § 24.

**16.** "No person shall be debarred from prosecuting or defending any civil cause for or against him or herself, before any tribunal in the state, by him or herself, or counsel, or both." Miss. Const art. III, § 25.

be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. A plaintiff asserting a claim under § 1983 generally must prove (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation (2) proximately caused (3) by the conduct of a "person" (4) who acted "under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.

### 1. Claims Against the City of Gulfport and Official Capacity Claims

The plaintiff's claims against the individual defendants sued in their official capacities are the functional equivalent of claims against the City of Gulfport. *See Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' . . . [A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. . . . It is not a suit against the official personally, for the real party in interest is the entity.") (internal citations omitted).

■ In *Webster v. City of Houston,* the Fifth Circuit, sitting *en banc,* promulgated the standard to establish municipal liability under Section 1983, stating that "[a] municipality is liable under § 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy." 735 F.2d 838, 841 (5th Cir.1984). "Official policy" is defined as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

*Palmer v. City of San Antonio,* 810 F.2d 514, 516 (5th Cir.1987). As correctly noted by the defendants, claims asserting liability based on the doctrine of *respondeat superior* are not redressable under Section 1983. *See Monell v. Department of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory.").

The plaintiff alleges that his constitutional deprivation in this case was caused by a policy or custom of the City of Gulfport to inadequately train and supervise its employees. In *City of Canton v. Harris,* the U.S. Supreme Court outlined the requirements for a Section 1983 claim for failure to train and supervise:

[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. . . . . [A] municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation." Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983. As Justice BRENNAN's opinion in *Pembaur v. Cincinnati,* 475 U.S. 469, 483–484, 106 S.Ct. 1292, 1300–1301, 89 L.Ed.2d 452 (1986) (plurality) put it:

**634**

"[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. *See also Oklahoma City v. Tuttle,* 471 U.S., at 823, 105 S.Ct., at 2436 (opinion of REHNQUIST, J.). Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality—a "policy" as defined by our prior cases—can a city be liable for such a failure under § 1983.

489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (citation omitted).

■■■ The Complaint in this case contains no allegations of an official policy or custom of failure to train and supervise, and alleges no acts that are indicative of such a policy. In the plaintiff's responses to the instant motions to dismiss, the acts which he alleges were taken pursuant to official policy relate solely to the search and seizure that occurred at "We Cash It" on October 22, 1993.[17] Because the plaintiff's allegations of a policy or custom supporting municipal liability relate solely to the plaintiff's allegation that the search and seizure of the premises of "We Cash It" violated his rights under the Fourth Amendment to the U.S. Constitution, Roderick's claims against the City of Gulfport and the other defendants sued in their official capacities are cognizable only if the plaintiff has alleged a viable claim with respect to the initial seizure of the evidence from "We Cash It." As noted earlier, the fact that a warrant was issued by a Municipal Court Judge, without any alleged omission or commission by the offi-

cers involved, is fatal to these claims. Thus, Roderick has stated no cognizable claim against the City of Gulfport. Alternatively, the Court finds that the Amended Complaint does not sufficiently allege a policy or custom, and the plaintiff's claims contained in his Rule 7(a) Reply[18] are mere conclusory allegations, and fail to identify any policy or custom of the City of Gulfport that was a "moving force" behind the constitutional violations alleged by the plaintiff. In light of the foregoing, Roderick has failed to state a claim against the City of Gulfport and the defendants sued in their official capacities, and the instant motions to dismiss are well taken as to these parties.

*2.  Individual Capacity Claims Against Payne, Twomey and Staehle: Qualified Immunity*

*a.  Qualified Immunity: Heightened Pleading Requirements*

■■■ In cases where the defendant claims entitlement to qualified immunity, the plaintiff's Complaint must satisfy a "heightened pleading standard." *Baker v. Putnal,* 75 F.3d 190, 195 (5th Cir.1996). The Fifth Circuit summarized the "heightened pleading standard" as follows:

[T]his standard requires more than conclusory assertions. It requires claims of specific conduct and actions giving rise to a constitutional violation. Thus, the [plaintiff] must plead more than ... "conclusory allegations failing to set forth specific facts showing the [alleged constitutional violation and that the defendant's actions were] objectively unreasonable." ... [A] plaintiff must first

---

17. "The City of Gulfport's failure to supervise and properly train its police officers in lawful, constitutional methods of search and seizure resulted in violations of Plaintiff's constitutional rights." (Pl.' Br. Supp. Reply to Mot. Gulfport et al. Dismiss at 10–11.)

18. The plaintiff filed a Rule 7(a) Reply, and the defendants have filed two separate motions to strike the same. The Court's discussion of the Rule 7(a) Reply and the motions pertaining to it is contained in Section III of this Memorandum Opinion and Order.

"support his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts."

*Id.* at 195 (citations omitted); *see also Schultea v. Wood,* 47 F.3d 1427, 1434 (5th Cir.1995) ("The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts."). If a plaintiff supports his claim with the requisite factual specificity, as a general rule, the plaintiff's claims should not be dismissed for failure to state a claim on qualified immunity grounds, because qualified immunity is largely a fact-based issue and thus enmeshed with the merits of the plaintiff's claims. *See id.* at 197.

The following allegations, taken from Paragraphs 22 and 25 of the Amended Complaint, constitute the bulk of the conduct that Roderick claims violated his due process rights:

> Defendants held Plaintiff's property for nineteen days without bringing any charges against Plaintiff or returning the property. Defendants continued to hold Forty Seven Thousand ($47,000.00) Dollars in negotiable instruments at the Gulfport Police Department with the consent of all of the Defendants.... [A]fter being told by three courts the conduct was improper under Mississippi law, Leslie Staehle and the State, acting through Defendants, refused to return the property.

(Pl.'s Am. Compl. ¶¶ 22, 25.) In addition, the plaintiff stated in his Response Brief that "[a]ll allegations in the original Complaint and the Amended Complaint refer-

ring to the actions of City of Gulfport police officers include the Defendants, George Payne and Ed Twomey." [19]

It is apparent from these pleadings that the plaintiff has been heretofore unable to specifically identify the party or parties responsible for the retention of his property. However, in light of the fact that there is presently a court order directing return of the property, the Complaint has stated a due process claim against the party or parties who have elected not to return the defendant's property. Therefore, the Court finds that further discovery is necessary to identify the persons who undertook the "specific conduct and actions" that Roderick claims violated his due process rights.

### b. Qualified Immunity: Objective Reasonableness

■■■ Defendants Payne, Twomey and Staehle assert the defense of qualified immunity with respect to the plaintiff's claims against them in their individual capacities. The doctrine of qualified immunity shields from liability those governmental officials who perform discretionary functions, unless such officials violate a constitutional or statutory right that is either clearly established or such that the official should have reasonably known about it. *See Evans v. Ball,* 168 F.3d 856, 860 (5th Cir.1999). In determining whether a defendant is protected by qualified immunity, the U.S. Supreme Court has advanced a two-pronged inquiry. *See id.* (citing *Siegert v. Gilley,* 500 U.S. 226, 231–32, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). First, the Court must determine "whether, under current law, [the plaintiff] has alleged a constitutional violation at all." *Id.* The second prong is comprised of two parts:

**19.** (Pl.'s Br. Resp. Mot. Gulfport. et al. Dismiss at 9.)

(1) "whether the allegedly violated right was 'clearly established' at the time of the incident; and

(2) if so, whether the defendant's conduct was objectively unreasonable in light of the clearly established law."

*Id.* As previously noted, the plaintiff has alleged the violation of his right to due process under the Fourteenth Amendment to the U.S. Constitution. Therefore, Roderick has alleged a constitutional violation, and the first prong is satisfied. The plaintiff's right to recover the property upon final disposition of the criminal charges against him and after the procurement of an order directing return of the property, was clearly established, at the latest, when the Mississippi Supreme Court entered its judgment in the *Newman* case in 1992. *See Newman,* 597 So.2d at 614. Therefore, the right was clearly established prior to the alleged due process violation, which followed seizure of the property in 1993, and the first component of the second prong is also met.

■ In light of the clear mandate of the *Newman* decision, the Court finds that no reasonable official would conclude that it was proper to continue to retain the plaintiff's property following the issuance of the court order directing its return. Therefore, while a final determination of this issue must await further discovery, it appears to the Court that if and to the extent that any of the named real person defendants participated in the retention of Roderick's property following the court order, their conduct was not objectively reasonable and they are not entitled to qualified immunity.

### c. *Conclusion*

For these reasons, the Court will postpone determination of the qualified immunity issue pending limited discovery on the issue of qualified immunity with respect to

Roderick's due process claims, particularly the defendants' conduct, if any, relating to the continued retention of Roderick's property following the court order directing its return.

## C. Defenses Peculiar to Leslie Staehle Lee

Staehle claims that the statute of limitations has run on the claims against her that occurred more than three years prior to the filing of the Amended Complaint, which added her as a party, on July 30, 1999. Staehle is correct in this respect, as the three-year statute applies and the requirements for relation back of the Amended Complaint to the date of the filing of the original Complaint in this cause are clearly not met. *See Jacobsen v. Osborne,* 133 F.3d 315, 320 (5th Cir.1998) (interpreting FED. R. CIV. P. 15(c)). However, the only surviving § 1983 claim in this case is the due process claim pertaining to the retention of Roderick's property, which occurred within the applicable limitations periods. Thus, the running of the statute of limitations is merely an alternate basis for dismissal of the plaintiff's claims against Staehle dealing with the seizure of the plaintiff's property at "We Cash It" on October 22, 1993, and the events surrounding said seizure.

■ Staehle also claims that she is entitled to absolute prosecutorial immunity for the actions which the plaintiff claims violated his constitutional rights. The Court is of the opinion that the retention of Roderick's property during the pendency of his criminal action constitutes a prosecutorial function, and that Staehle is entitled to absolute immunity for her acts, if any, in retaining the plaintiff's property while the criminal case against him was pending. *Cf. Coleman v. Turpen,* 697 F.2d 1341, 1344 (10th Cir.1982) (finding that the prosecutor's "efforts to retain" seized evi-

dence during the pendency of the plaintiff's appeals "are part of the presentation of the State's case."). As the Court has heretofore found that the plaintiff has stated no viable claim relating to the retention of Roderick's property during the pendency of his criminal case, absolute immunity is an alternate basis for the dismissal of the plaintiff's claims against Staehle during this time period.

■ After final disposition of the criminal case against Roderick, Staehle had no further prosecutorial role, the case having been concluded. Therefore, it is apparent that, following the conclusion of the criminal case, Staehle was acting " 'as an administrator rather than as an officer of the court,' " *Id.* quoting *Imbler v. Pachtman,* 424 U.S. 409, 431 n. 33, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), and is therefore not entitled to absolute prosecutorial immunity for her role, if any, in the retention of Roderick's property following the final conclusion of his criminal case. *See Schrob v. Catterson,* 948 F.2d 1402, 1419 (3d Cir.1991) (finding prosecutor not entitled to absolute immunity for post-trial disposition of seized property).

### D. State Law Claims

The plaintiff has also alleged violations of his rights under the Mississippi State Constitution. Because the defendants are a municipality of Mississippi and its employees, the plaintiff's state law claims are governed by the Mississippi Tort Claims Act. As aptly pointed out by Staehle, Section 11–46–11(1) of the Mississippi Code provides:

> [A]ny person having a claim for injury arising under the provisions of [the Mississippi Tort Claims Act] against a governmental entity or its employee shall proceed as he might in any action at law or in equity; provided, however, that ninety (90) days prior to maintaining an action thereon, such person shall file a notice of claim with the chief executive officer of the governmental entity.

MISS. CODE ANN. § 11–46–11(1). As stated by the Mississippi Supreme Court, "[t]he notice of claim requirement 'imposes a condition precedent to the right to maintain an action' " and, as a consequence, "the timely filing of notice is a jurisdictional prerequisite." *Gale v. Thomas,* 759 So.2d 1150, 1158 (Miss.1999) (citations omitted).

■ The plaintiff does not contest the fact that the notice requirement was not met in this case. Therefore, the plaintiff's Mississippi state law claims against the City of Gulfport and the official capacity claims against the real person defendants must be dismissed. *Id.; MA v. City of Columbus,* No. 1:97CV56-B-D, 1997 WL 560941, at *2 (N.D.Miss. Aug.4, 1997); *Simpson v. City of Pickens,* 887 F.Supp. 126, 130 (S.D.Miss.1995).

Whether the lack of notice is fatal to the plaintiff's individual capacity claims, however, is less apparent. In *McGehee v. DePoyster,* the Mississippi Supreme Court noted the possible applicability of the notice provision to individual capacity suits against government employees who are acting within the scope of employment, stating that "an action against a government employee in his individual capacity may be subject to notice of claim requirements if the act complained of occurred within the scope and course of employment." 708 So.2d 77, 80 (Miss.1998). In doing so, the court alluded to a case where the Indiana Court of Appeals held that " '[w]here the plaintiff elects to sue the governmental employee in her individual capacity, notice is required only if the act or omission causing the plaintiff's loss is within the scope of the defendant's employment.' " *Id.* (quoting *Van Valkenburg v. Warner,* 602 N.E.2d 1046, 1049 (Ind.Ct. App.1992)). However, the court in *McGe-*

*hee* found that the defendant had acted outside the scope of employment, and therefore did not decide whether notice is required for individual capacity claims against state employees for acts taken within the scope of employment. *See id.* at 80–81. As the Mississippi Supreme Court has not addressed this specific issue subsequent to its opinion in *McGehee,* there is no definitive answer to the question.

However, the question need not be answered in this case, because Section 11–46–7(2) provides that "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties." Miss. Code Ann. § 11–46–7(2); *see also Moore v. Carroll County,* 960 F.Supp. 1084, 1091 (N.D.Miss.1997) (noting that the defendant employee would "escape liability if his actions were within the course and scope of his employment"). Therefore, if Payne, Twomey and Staehle were acting within the scope of their employment when they undertook the acts that the plaintiff claims violated his due process rights under the Mississippi State Constitution, then they are immune from liability, regardless of whether pre-suit notice was required for these claims.

Section 11–46–7(2) enumerates several specific instances in which an employee is *not* acting within the scope of employment:

> For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense.

Miss. Code Ann. § 11–46–7(2). Allegations of libel and slander are mentioned in passing in the plaintiff's prayer for damages, in which he seeks actual and compensatory damages for "lost profits and income (past, present and future), loss of reputation, libel and slander ...."[20] The Amended Complaint also contains what could be construed as an allegation that the defendants acted with malice. Malice was defined by the Mississippi Supreme Court as "an objective state of mind which may be inferred if the plaintiff demonstrates that the defendant acted with ruthless or reckless disregard for the plaintiff's rights." *Moore,* 960 F.Supp. at 1091 (citing many cases). In *Moore,* the court held that the plaintiff's allegation that a defendant " 'knew of the inadequate training of [a subordinate police officer] in handling firearms and in the law enforcement procedures' but placed the [subordinate officer] on patrol with an automatic weapon despite such knowledge," could possibly "be read to encompass an allegation that [the defendant] acted with malice." *Id.* at 1091. In light of this allegation, the court was unable to find that the plaintiff had failed to state a claim for which relief could be granted in his individual capacity claim against the defendant in question. *Id.*

Roderick has alleged that the defendants refused to return his property after the final conclusion of the criminal case against him and despite a court order compelling the return of the subject property. For reasons similar to those expressed in *Moore,* the court is unable to hold that the plaintiff has failed to state a claim for which relief may be granted. Accordingly, the defendants' motions to dismiss shall be denied with respect to the individual capacity claims.

**20.** (Am. Compl. at 9.)

## III. MOTIONS TO STRIKE THE PLAINTIFF'S RULE 7(a) REPLY

The City of Gulfport, George H. Payne, Jr. and Ed Twomey have filed a Motion to Strike Plaintiff's Rule 7(a) Reply, and Leslie Staehle Lee has filed a Motion to Strike Motion Response by Byron Roderick. Both of these motions seek that Roderick's Rule 7(a) Reply be stricken. Rule 7(a) of the Federal Rules of Civil Procedure states, with respect to the types of pleadings allowed:

> There shall be a complaint and an answer; a reply to a counterclaim denominated as such, and answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. *No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.*

FED. R. CIV. P. 7(a) (emphasis added). The defendants have made several arguments in support of their respective motions, the most prominent of which are: (1) that leave of the court must be obtained before a Rule 7(a) Reply to a qualified immunity defense may be raised; and (2) that in light of the fact that the parties named in the original Complaint have asserted the qualified immunity defense since the commencement of this action in 1993, the plaintiff has already pled his best case and is not entitled to a Rule 7(a) Reply.

Although the Court has alluded to the contents of the plaintiff's Rule 7(a) Reply in this Opinion, whether the Court considers the plaintiff's Rule 7(a) Reply is not material to the disposition of the instant Motions to Dismiss, and the resolution of the Motions to Dismiss would not be altered in any wise by the Court's consideration, or lack thereof, of the plaintiff's Rule 7(a) Reply. Therefore, the defendants' motions seeking that the plaintiff's Rule 7(a) Reply be stricken are moot. Accordingly,

IT IS HEREBY ORDERED that the Motion to Dismiss filed by the City of Gulfport, George H. Payne, Jr. and Ed Twomey [docket no. 78–1] is GRANTED as to the plaintiff's claims for violation of his rights under the First Amendment, Fourth Amendment, Fifth Amendment, and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, and the plaintiff's claims under Sections 24 and 25 of the Mississippi State Constitution, as well as all the plaintiff's claims against the City of Gulfport and all the plaintiff's claims against George H. Payne, Jr. and Ed Twomey in their official capacities, and DENIED as to the plaintiff's claims against defendants George H. Payne, Jr. and Ed Twomey in their individual capacities for civil conspiracy, violation of his due process rights under the Fourteenth Amendment to the U.S. Constitution and Section 14 of the Mississippi State Constitution.

IT IS FURTHER ORDERED that the plaintiff's claims against the City of Gulfport and against George H. Payne, Jr. and Ed Twomey in their official capacities, and the plaintiff's claims against George H. Payne, Jr. and Ed Twomey in their individual capacities for violation of the First Amendment, Fourth Amendment and Fifth Amendment to the U.S. Constitution, the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, and Sections 24 and 25 of the Mississippi State Constitution are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the Motion to Dismiss Amended Complaint filed by Leslie Staehle Lee [docket no. 66–1] is GRANTED as to the plaintiff's claims under the First, Fourth and Fifth Amend-

ments to the U.S. Constitution, the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, and Sections 24 and 25 of the Mississippi State Constitution, and DENIED as to the plaintiff's claims for violation of his due process rights under the Fourteenth Amendment to the U.S. Constitution and Section 14 of the Mississippi State Constitution, as well as the plaintiff's claims for civil conspiracy.

IT IS FURTHER ORDERED that the plaintiff's claims against Leslie Staehle Lee under the First, Fourth and Fifth Amendments to the U.S. Constitution, the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, and Sections 24 and 25 of the Mississippi State Constitution are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the Motion to Strike Plaintiff's Rule 7(a) Reply filed by the City of Gulfport, George H. Payne, Jr. and Ed Twomey [docket no. 65–1] is MOOT.

IT IS FURTHER ORDERED that the Motion to Strike Motion Response by Byron Roderick filed by Leslie Staehle Lee [docket no. 82–1] is MOOT.