Curtis Newman, investigator for the Mississippi Highway Safety Patrol (MHP), and MHP appeal a judgment of the circuit court of Jackson County directing them to return a stolen pickup truck, which had been delivered by its owner, Motors Insurance Corporation (MIC), to Walter H. Stuart, an innocent purchaser of the stolen vehicle. The basis of the court's decision directing return of the vehicle was that it had been delivered by MHP to MIC without a judicial determination of its right to do so. Finding the court erred in directing return of the vehicle and assessment of damages under the facts of this case, we reverse and render judgment for the appellants.
 FACTS
This case involves two Chevrolet pickup trucks, one a 1987 model S-10 Chevrolet pickup whose vehicle identification number (V.I.N.) concluded with digits 4H8179610, and a 1988 model S-10 Chevrolet pickup, with V.I.N. 1GCBS14E4J210647. The 1987 model was wrecked beyond repair; the 1988 model was stolen.
In the car and truck business, when a motor vehicle is wrecked to the extent that *Page 611 
repairing it would cost more than its fair market value, it is said to be "totaled." If the owner is fortunate enough to carry property, or "collision" insurance, the insurance carrier pays the owner the fair market value of the vehicle, and title is transferred to the carrier. The insurance company in turn sells the wrecked vehicle, or "salvage," to a junk or used parts dealer. These dealers serve an economic purpose as a source of supply to those needing a motor vehicle parts at a modest cost; their meeting an aesthetic need of beautifying the countryside is more debatable.
A "chop shop" is an operation whereby a stolen motor vehicle is altered, dismantled or reassembled in an attempt to effect an apotheosis from a crime-tainted vehicle to a perfectly innocent one. The term is defined by statute. Miss. Code Ann. § 63-25-3(a) (1989).
The law enforcement division of MHP has a department whose function is to investigate thefts of vehicles and recover them. A number of motor vehicle insurance carriers fund the nonprofit organization National Automobile Theft Bureau (Bureau), whose function is likewise to investigate and recover stolen vehicles, and to work in cooperation with state and federal law enforcement agencies.
The 1988 model Chevrolet pickup was stolen, brand new, off the lot of Mitch Smith Chevrolet, Inc., an automobile dealership in Cullman, Alabama, in December, 1987. It was financed by General Motors Acceptance Corporation (GMAC), and after its theft had been reported, MIC paid GMAC, and in February, 1988, Mitch Smith Chevrolet transferred title to the pickup to MIC.
At some time following the theft of the 1988 Chevrolet pickup, Emmett Boozer, an investigator with MHP, and Virgil Luke of the Bureau were investigating a suspected chop shop establishment in a rural area of Itawamba County. There they found a motor and a transmission out of the 1987 model Chevrolet which still had the original factory serial numbers, namely: 4H8179610.
Luke entered this number in the Bureau's computer to discover the full number, which was V.I.N. 1GCBS14E4H8179610, and also listed the vehicle as totally wrecked. These records also showed that Maryland Casualty Company was the insurance carrier, and Luke in turn learned from this company that it had sold the salvage to Strong's Used Cars in Carthage. Luke also had this full number run through the computers of the State motor vehicle comptroller's office, whose records revealed that Maxey's Used Cars of Route 1, Marietta, Mississippi, had sold this 1987 Chevrolet pickup to Walter H. Stuart in Pascagoula, and a certificate of title thereto issued to him on January 4, 1988. Marietta, it might be noted, is a Prentiss County community approximately 25 miles from the Tennessee state line.
The suspicious circumstances of Stuart's owning and driving a vehicle which presumably had been totally wrecked, and with its motor and transmission in an Itawamba County junk yard, prompted Luke to contact Curtis Newman, a highway patrol investigator in Pascagoula, to check this matter out.
On either May 10 or 11, 1988, Newman met Stuart at Stuart's place of employment, Citizens National Bank in Pascagoula, and informed Stuart that he had reason to believe that Stuart's truck was a stolen vehicle. Newman asked Stuart for permission to inspect Stuart's truck, but Stuart refused to let him inspect the truck until he talked with his attorney. Stuart told Newman to come back in two or three hours. Stuart contacted his attorney and was told that he should let Newman inspect the vehicle. Newman returned later that afternoon and inspected the vehicle in the presence of Stuart.
Newman first noticed that the vehicle identification plate had been tampered with because of the altered location of the rivets. Also, the identification plate itself was disfigured. Newman then observed that the sticker containing the serial number on the driver's door was disfigured. He inspected other stickers and concluded that they had once been removed. Newman *Page 612 
then inspected the engine and noticed that, unlike a normal engine that was over a year old, it was very clean. Stuart told him that he had not cleaned the engine. Newman then inspected the motor number and could tell that it had been altered by stamping another number on top of the original number. Newman then found the molded numbers "88" on the engine which indicated that the truck actually was a 1988 model instead of a 1987 model. Also, the patches on the seat belts, which indicate the model of the truck, had been removed. Newman further noticed that the rivets on the vehicle identification plate on the dashboard were homemade rivets.
Newman told Stuart that he believed the truck had been stolen and that he wanted to make arrangements to have it inspected further. They agreed to discuss it further the next day. The next day, Stuart told Newman that his attorney advised him that Newman would need a court order to take the vehicle.
On May 12, 1988, Newman appeared before Mary B. Blackwell, justice court judge of Jackson County, and executed an affidavit for a search warrant. Attached thereto as "Underlying Facts and Circumstances" was a summary of the above facts. After administering the oath to Newman, Blackwell also had him testify orally about the facts and circumstances which led him to believe, and the justice court judge in turn to conclude, that there was a probable cause to search and seize the pickup. The affidavit for the search warrant alleged the pickup was held in violation of Miss. Code Ann. § 97-17-41 (1972), the grand larceny criminal statute.
Blackwell then issued a search warrant of the same date which, among other things, directed Newman to "bring the things seized before this Court instanter; and prepare a written inventory of the items seized, and have then and there this writ, with your proceedings noted thereon."
Newman executed the search warrant and took the truck to the Harrison County Sheriff's impound lot, where he made an in-depth inspection of it and concluded that the truck actually was a 1988 Chevrolet S-10 truck with the identification number 1GCBS14E4J210647. There had been an unsuccessful attempt to obliterate and remove this number from its motor. On May 13 Newman made a return on the search warrant that he had taken a 1988 Chevrolet pickup bearing serial 1GCBS14E4J210647 from Stuart.
Newman forwarded this number to Luke, who entered it into the Bureau's computer, which showed that the truck in Stuart's possession was the truck which had been stolen from Mitch Smith Chevrolet in Cullman, Alabama. Luke notified MIC, which according to the Bureau's records now had title to the truck. It was then driven to MHP headquarters in Jackson. Newman informed Stuart on May 16, 1988, that the truck was indeed a stolen vehicle. Luke inspected the truck in Jackson and after raising the original identification number with hydrochloric acid, also concluded that the truck was the one stolen from the dealership. On May 18 MHP released the vehicle to MIC.
On May 20 Stuart filed a complaint in the circuit court of Jackson County against Newman and the Mississippi Department of Public Safety to quash the search warrant and for the return of the truck. The complaint alleged that the search warrant was void, and requested the court to enter an order setting the matter for hearing at the earliest possible date allowed by law, to direct the return of the property, to quash the search warrant, to impose penalties as provided by law upon the defendant Newman, and for payment to Stuart of fifty cents per mile for all miles driven by the pickup from the time it left Stuart's possession until its return.
On that date the Honorable Darwin Maples, circuit judge, issued a fiat directing that the matter come on for hearing before him on June 1, 1988. On May 31, 1988, Newman and the Mississippi Department of Public Safety answered asserting several defenses, including failure to join a necessary party and sovereign immunity of the highway patrol. The answer also asserted *Page 613 
that the pickup was stolen and that Stuart was not entitled to any relief.
The circuit judge conducted a full hearing on June 1, 1988, at which time the above facts were adduced into evidence, through the testimony of Luke, Newman and Blackwell. Also, Ricky Steve Oliver of Haleyville, Alabama, testified that he had customized the pickup truck for Mitch Smith Chevrolet, at which time he took photographs of it, and had subsequently examined the pickup truck seized, and that the truck seized was the truck he had customized. He based this upon "pin striping," and his particular painting on the "cab spoilers." Also, the stripe on the left side of the bed and cab of the truck, one appeared "a half-inch to an inch higher."
At the hearing Stuart attacked the validity of the search warrant.
The circuit judge was convinced the pickup truck purchased and possessed by Stuart was in fact stolen, but he was concerned that due process had been violated in that it had been delivered to the insurance company without a judicial hearing determining MIC as the true owner. The circuit judge never made a ruling on the validity of the search warrant. At the conclusion of the hearing, both sides were directed to submit briefs, and on August 19, 1988, entered judgment in favor of Stuart.
The judgment directed the defendants to immediately restore the Chevrolet S-10 pickup truck V.I.N. 1GCBS14E4J210647 to Stuart, to pay him statutory damages pursuant to Miss. Code Ann. § 63-17-7
(1972) on its mileage, attorney's fees in the amount of $1,231.70, and enjoined the defendants from interfering with Stuart's possession of the vehicle "without having a preseizure judicial determination made as to whether or not the Defendants or any other third parties are entitled to possession of the said motor vehicle."
Newman and the Highway Patrol have appealed.
 LAW
From this record there can be little doubt but that the vehicle seized from Stuart was not a 1987 model Chevrolet pickup, V.I.N. 1GCBS14E4H8179610 for which he had a certificate of title from the motor vehicle title division of the State Tax Commission. Instead, it was a 1988 model Chevrolet pickup with true V.I.N. 1GCBS14E4J210647 which had been stolen from Mitch Smith Chevrolet, Inc., an automobile dealer in Cullman, Alabama.[1]
Also, clearly shown is that when Newman seized the pickup pursuant to a search warrant on May 12, 1988, the lawful owner of the 1988 model Chevrolet pickup was MIC, to whom title had been transferred by Mitch Smith Chevrolet. MIC had paid the full dealer's cost under a theft loss insurance policy.
The record also clearly shows that on May 12, 1988, the justice court judge had been furnished with probable cause to issue the search warrant by sworn affidavit and testimony of Newman.Bevill v. State, 556 So.2d 699, 713 (Miss. 1990). Searches for and seizures of stolen property are authorized by Miss. Code Ann. §§ 99-25-15, 99-25-17 (1972). Also, our motor vehicle laws authorize seizure of a motor vehicle which a law enforcement officer has reasonable grounds to believe has been stolen. Miss. Code Ann. § 63-17-9 (1989). Finally, Miss. Code Ann. § 63-25-7
(1989) authorizes seizure by a law enforcement officer of a motor vehicle that has had its vehicle identification number altered, defaced or removed.
We do not have in this case an instance of an unlawful or improper seizure. Cf. Underwood v. Foremost Financial Services,563 So.2d 1387 (Miss. 1990). The search and seizure of the pickup by Newman as an investigator of MHP, and its inspection by him and the Patrol was lawful and proper.
In this state, as in most states, the law is that neither the thief of stolen property nor his transferees can convey any title or property right to such property. A bona fide purchaser of stolen property *Page 614 
acquires no title or interest therein. Allstate Insurance Co. v.Estes, 345 So.2d 265, 266 (Miss. 1977). Therefore, Stuart had no property title, right or interest in the 1988 Chevrolet pickup seized from him on May 12, 1988.
When this vehicle was seized, however, the justice court judge became its lawful custodian, subject only to its actual custody being temporarily placed with the Highway Safety Patrol and law enforcement agencies for inspection and use as evidence in a criminal prosecution. Anderson v. State, 468 N.E.2d 569 ( Ind. App. 1984); Matter of Documents Seized Pursuant to a SearchWarrant, 124 Misc.2d 897, 478 N.Y.S.2d 490 (N.Y.Supp. 1984);Sawyer v. Gable, 400 So.2d 992 (Fla.App. 1981). Miss. Code Ann. §§ 99-25-15, 99-25-17 require that stolen property "be disposed of according to law."
There are questions in this case which arise from the delivery of the pickup truck absent any court approval. Did Stuart have a right to a judicial determination as to who was lawfully entitled to possession of it, was this right violated, and if so, what were his damages, if any?
Newman and MHP assert that because it was clearly shown that Stuart had no title to the truck, this in and of itself should end the inquiry under Allstate, supra. Not quite. SeeWolfenbarger v. Williams, 774 F.2d 358 (1985).
Most states have statutes governing disposition of property seized under a search warrant.[2] Mississippi has no such statute and this Court has not discussed this issue in any previous decisions. We, therefore, must resort to common law principles pronounced by courts from our sister states.
From ancient origin the primary purpose of a search warrant was to aid criminal prosecution, People, ex rel. Simpson v.Kempner, 208 N.Y. 16, 101 N.E. 794, 46 L.R.A. (N.S.) 970 (1913), with the ancillary purpose of restoring stolen property to its rightful owner. State v. Frye, 194 S.W.2d 692 (Mo. App. 1946);Haworth v. Newell, et al., 102 Iowa 541, 71 N.W. 404, 405 (1897).
Property seized under a search warrant is an exercise of the police power of the state, and the state has the authority to keep and maintain control of the property until it is no longer needed in a criminal prosecution or investigation. People, exrel. Simpson v. Kempner, 101 N.E. at 797; Matter of DocumentsSeized, 478 N.Y.S.2d at 490.
While the property is thus seized, it is under the lawful custody of the magistrate who issued the warrant, or the court having jurisdiction of the criminal prosecution in which the property is material evidence. Miss. Code Ann. § 99-25-17 (1972);People, ex rel. Simpson v. Kempner; Lawrence v. Mullins,224 Tenn. 9, 449 S.W.2d 224 (1969).
When seized property is no longer needed for criminal prosecution by the state, it should be restored to its lawful owner. If there is no conflict as to ownership, the court having custody of the property ordinarily directs its release to the owner. Haworth v. Newell, et al., 71 N.W. at 405.
Even though stolen property may have been seized by an invalid search warrant, this does not entitle a thief or the person claiming title through him to its return. Lawrence v. Mullins,
224 Tenn. at 20, 449 S.W.2d at 228; State, ex rel. Schillberg v.Everett Dist. Justice Court, 90 Wn.2d 794, 798-99,585 P.2d 1177, 1180 (1978).
Finally, if there is a dispute as to ownership of allegedly stolen property, this is an entirely civil proceeding in which the state has no interest, and the property is held until the question of ownership has been determined by a civil action in a court *Page 615 
of competent jurisdiction. Moore v. State, 504 N.E.2d 586, 588 (Ind. App. 1 Dist. 1987); State, ex rel. Schillberg v. EverettDist. Justice Court, 585 P.2d at 1180.
MHP, therefore, had no authority on its own in this case to deliver the vehicle to MIC absent court approval with no advance notice to Stuart of its intent to do so, and without giving him an opportunity to contest the matter in a court of competent jurisdiction. The appropriate procedure would have been for MHP, once the pickup served no further purpose in a criminal investigation or prosecution, to make a motion in the justice court for authority to release it to MIC, and give Stuart and MIC reasonable notice of such application and an opportunity to be heard. If there was no conflict or objection to the motion, it would have been proper for the justice court to release it to its lawful owner, MIC.
Yet conceding Stuart's right to a judicial determination of right of possession, how was he damaged?
In this case he did have a full judicial hearing, and at the hearing it was conclusively shown that he had no right, title or interest in the truck. There was no proof that the court's duty would have been any different had he had a full blown pre-delivery hearing. The circuit court manifestly would have been duty bound at the conclusion of the trial to hold MIC was the rightful owner, and that Stuart had no interest in the truck. MHP's sole wrong was the premature delivery of the stolen vehicle to its rightful owner, which the court would have been duty bound to eventually order in any event.
Stuart offered no proof of how he was damaged by premature release of custody of the truck to MIC rather than MHP retaining possession of it until there had been a judicial determination of ownership. Because he had no right of possession, what monetary difference did it make to him pending a court hearing whether MIC or MHP possessed it? None.
From this record, we conclude that the circuit judge erred, first, in not joining MIC, the lawful owner, as a necessary party. Directing the return of property belonging to MIC to Stuart without making MIC a party to the hearing, or giving it any notice whatever of the proceeding, was a blatant violation of MIC's right to due process. State, ex rel. Schillberg v. EverettDist. Justice Court, 90 Wn.2d at 798-799, 585 P.2d at 1180.See also Justice v. Fabey, 541 F. Supp. 1019, 1023 (E.D.Pa. 1982); Davis v. Fowler, 504 F. Supp. 502, 506 (D.Md. 1980);People v. Superior Court of Alameda Cty., 100 Cal.App.3d 154, 158-59, 160 Cal.Rptr. 663, 665-66 (1979).
The circuit judge erred in directing the return of the pickup to Stuart. Under the facts of this record, he was not, under any view of the case, entitled to its possession.
The circuit judge likewise erred in assessing attorney's fees or damage of any kind.
For the reasons stated, the cause is reversed and judgment is entered here for the appellants.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
DAN M. LEE, P.J., dissents without written opinion.
[1] The numbers of the two vehicles which are not identical are italicized.
[2] Ariz. Rev. Stat. Ann. § 13-3941 (1978); Colo. Rev. Stat. § 42-16-102 (1984); Conn. Gen. Stat. § 54-36a (1991); Ga. Code Ann. § 17-5-50 (1990); Idaho Code § 19-3801 (1987); Ind. Code Ann. § 35-33-5-5 (1985); Kan. Stat. Ann. § 22-2512 (1988); Mich. Stat. Ann. § 28.1259(5) (1986); Mo. Ann. Stat. § 542.301 (1987); Neb. Rev. Stat. § 29-820 (1989); Nev.Rev.Stat. § 179.135 (1991); N.H. Rev. Stat. Ann. § 595-A:6 (1990); N.J. Stat. Ann. § 2C-65-2 (1982); Ohio Rev. Code Ann. § 2933.41 (1987); Okla. Stat. Ann. Tit. 22 § 1232 (1986); Or. Rev. Stat. § 133.663 (1990); Tenn. Code Ann. § 55-5-108 (1988); Wash. Rev. Code § 10.79.050 (1989).