986 So.2d 358 (2008)
Albert J. KEA, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2006-KA-01383-COA.
Court of Appeals of Mississippi.
July 1, 2008.
*359 Julie Ann Epps, Canton, E. Michael Marks, Jackson, William Sumrall, Laurel, attorneys for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
Before KING, C.J., IRVING, CHANDLER and CARLTON, JJ.
CARLTON, J., for the Court.
¶ 1. Albert J. Kea was indicted for perjury by a Simpson County grand jury in October 2005 for statements made during a civil suit he filed against Entergy Corporation after his house burned in 1998. Kea was convicted of perjury in 2006 and sentenced to serve eight years in the custody of the Mississippi Department of Corrections. He now appeals his conviction and sentence.

FACTS
¶ 2. In May 1998, Kea was involved in a car accident that left him hospitalized for approximately ten days. He was released from the hospital on May 22, and his home in Magee, Mississippi burned down the next day. Kea settled with his insurance company. He later filed suit against Entergy, claiming that its faulty transformer was the cause of the house fire. Kea sought to recover damages for the loss of various collectibles and antiques, and he provided a list of the items to Entergy in discovery.
¶ 3. Before the trial against Entergy, Kea's son, Bob Key,[1] contacted Entergy and told them that the items that Kea claimed were lost in the fire were actually at Bob's home in Colorado. Entergy sent a representative to Colorado to investigate Bob's claims and found that the items were in fact not destroyed, but were in Bob's home.
¶ 4. Entergy did not disclose this information to Kea. Entergy called Bob as a witness at trial, and the case was dismissed because the items had not been destroyed. Kea was charged with perjury due to his testimony at the trial that the items had been destroyed. Bob claimed at trial that the items had never even been in the Kea home and never belonged to the Keas. Bob claimed that all of the items belonged to him and his wife, Lisa. Kea claimed that he and his wife had collected the items over the years through Bob, who would purchase the collectibles for them when he traveled.
¶ 5. Kea presented several witnesses at his perjury trial who identified individual items as having been on display at the Kea home prior to the fire. Those witnesses included an employee of the pest control company who serviced the Kea home regularly, a former neighbor, a relative, a family friend, and others who were familiar with the Kea home. They all testified to seeing several of the collectibles at issue in *360 Kea's home over the years. Other witnesses testified that they had seen Bob taking things from his father's home in Magee prior to the fire.
¶ 6. Bob denied that he was in Magee prior to the fire or that he took the items from the home. He claimed that he was in Turkey with his wife prior to the fire; therefore, he could not have been in Magee just before the fire. At the perjury trial, the prosecution presented the passports of Bob and his wife, Lisa, showing the visa stamps to prove they had been out of the country prior to the fire.
¶ 7. Kea raises three issues on appeal and asserts that, taken together, the errors are cause for a new trial. First, he contends that the trial court erred in not giving the jury a two-witness jury instruction. Second, Kea argues that the trial court violated his right to confrontation by admitting the unauthenticated passports of Bob and Lisa to prove they were in Turkey just before the fire. Third, Kea claims that there was insufficient evidence to convict him or, alternatively, that the verdict is against the overwhelming weight of the evidence. We find that Kea's first two claims constitute reversible error; therefore, these issues are dispositive of this appeal.

DISCUSSION

I. Whether the trial court erred in failing to give a "two-witness" instruction.
¶ 8. "In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." Johnson v. State, 823 So.2d 582, 584(¶ 4) (Miss. Ct.App.2002) (citing Collins v. State, 691 So.2d 918, 922 (Miss.1997)).
¶ 9. Kea claims that the trial court erred in not instructing the jury on the proof necessary to convict him of perjury. Kea did not request such an instruction at trial, but he claims that the trial court, on its own initiative, should have instructed the jury regarding the quantity of proof required. The State argues that any error that may be found in the trial court's failure to instruct the jury on this point is harmless error. The State argues that because Kea testified that the collectibles were destroyed in the house fire and because it is uncontested that the items were not destroyed, Kea's conviction was inevitable. We disagree and find that Kea was entitled to have the jury instructed as to the level of proof required to convict him.
¶ 10. Our supreme court explained in Nash v. State, 244 Miss. 857, 865-66, 147 So.2d 499, 502 (1962) as follows:
This Court has held in a long line of decisions that, although the other allegations of the indictment may be proved by a single witness, the falsity of the allegedly perjured statement must be established by the testimony of at least two witnesses or by one witness and corroborating circumstances and a conviction for perjury may not be secured and sustained on the uncorroborated testimony of one witness to the falsity of the allegedly perjured statement on which the perjury is assigned.
(Citations omitted). The State relies on Gordon v. State, 158 Miss. 185, 128 So. 769 (1930) for the proposition that the failure to give the two-witness jury instruction was harmless error. In Gordon, the supreme court held that the failure to give the instruction was harmless because the evidence in that case measured up to the requirements of the rule regarding the level of proof necessary to sustain a conviction. *361 Gordon, 158 Miss. at 187, 128 So. at 769. The supreme court stated:
In the case at bar, on the evidence, the verdict of the jury was correct; and, although the jury should have been advised as to the quantum of evidence required in a perjury case, it is manifest that the want of it in this case did not harm this appellant, for the reason that the evidence measures up to the requirement of the rule as to the quantum thereof necessary to sustain a conviction.
Id. (emphasis added). The supreme court has held more recently that "[t]he fact that on appeal the verdict of the jury can be supported by the evidence does not automatically excuse failure to give the required two[-]witness rule[.]" Hale v. State, 648 So.2d 531, 537 (Miss.1994). Thus, our opinion as to Kea's guilt or innocence is immaterial. In Hale, the supreme court held that:
The jury convicted without being instructed that more than the testimony of a single witness was required to justify their verdict. This was no mere "technical" error relating to the "formalities and minutiae" of the trial. (citation omitted). We are not authorized to look at the printed record, resolve conflicting evidence, and reach the conclusion that the error was harmless because we think the defendant was guilty. That would be to substitute our judgment for that of the jury and, under our system of justice, juries alone have been entrusted with that responsibility.
Id. (quoting Weiler v. United States, 323 U.S. 606, 611, 65 S.Ct. 548, 89 L.Ed. 495 (1945)). Further, the State should have instructed the jury as to the proof required in a perjury case regardless of whether or not the defense requested such an instruction. Id. at 537-38. The trial court's failure to instruct the jury in accordance with the two-witness rule as required in perjury cases constituted reversible error. Id. at 538.

II. Whether the trial court erred in admitting the passports of Bob and Lisa.
¶ 11. Several of Kea's witnesses testified that they saw Bob taking boxes out of Kea's home the week before the fire. Bob and Lisa claimed that they were in Turkey at the time, and Bob could not have been in Magee at that time taking items from Kea's home. The prosecution offered Bob's and Lisa's passports, and the visa stamps within, as evidence that they were in Turkey at the time that the witnesses claimed to have seen them at Kea's home. At trial, Kea objected to the admission of the passports into evidence based upon their authenticity.
¶ 12. This Court has articulated the standard of review for the admission or exclusion of evidence in a criminal case:
This Court's standard of review for the admission or exclusion of evidence by the trial court is very limited. The trial judge has a great deal of discretion in evaluating the relevancy and admissibility of evidence. Jefferson v. State, 818 So.2d 1099, 1104(¶ 6) (Miss.2002). "Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse" the trial judge's rulings. Id. (citing Hughes v. State, 735 So.2d 238, 270 (¶ 134) (Miss.1999)).
Turner v. State, 950 So.2d 243, 246(¶ 5) (Miss.Ct.App.2007). "However, the discretion of the trial judge must be exercised within the boundaries of the Mississippi Rules of Evidence." Stubbs v. State, 878 So.2d 130, 134(¶ 7) (Miss.Ct.App.2004).
¶ 13. Kea claims that the passports and the stamps on them were not properly authenticated as required by Mississippi Rules of Evidence 901 and 902(3), which deprived him of the right to confront the *362 witnesses against him. Mississippi Rule of Evidence 901(a) provides:
General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
¶ 14. The State argues that the passports needed no authentication because they are authentic on their face. The State concedes that the passport of Robert Keys was obtained through a fraudulent application because Bob used an alias to obtain the passport.[2] We do not agree that a fraudulently obtained passport could be considered authentic on its face for the purposes of establishing the information contained within as factual. See U.S. v. Weiss, 491 F.2d 460, 466 (2nd Cir.1974) (holding that a passport is not competent evidence to prove the defendant was not in Thailand absent proof by Thai authorities that if the defendant had entered or exited Thailand, an entry would have been placed on his passport); Gulotta v. United States, 113 F.2d 683, 685 (8th Cir.1940) (holding that a passport which was not authenticated or identified was not competent evidence to prove the facts stated therein). The State argues that the passports were authenticated by Bob and Lisa themselves, who testified that the passports were theirs and that they traveled to Turkey in May 1998. Under Rule 901(b)(1), a piece of evidence can be authenticated by testimony of a witness with knowledge that a "matter is what it is claimed to be." M.R.E. 901(b)(1). While the witnesses' testimonies may satisfy the authentication requirement for the passports, they do not effectively authenticate the visa stamps within the passport.
¶ 15. Kea argues that the visa stamps, not just the passports themselves, should have been authenticated. Mississippi Rule of Evidence 902, which describes the types of evidence that are self-authenticating and, thus, not required to be authenticated through extrinsic evidence states, in part:
(3) Foreign public documents. A document purporting to be executed or attested in his official capacity by a person authorized by the laws of a foreign country to make the execution or attestation, and accompanied by a final certification as to the genuineness of the signature and official position (A) of the executing or attesting person, or (B) of any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to the execution or attestation. A final certification may be made by a secretary of an embassy or legation, consul general, consul, vice consul, or consular agent of the United States, or a diplomatic or consular official of the foreign country assigned or accredited to the United States. If reasonable opportunity has been given to all parties to investigate the authenticity and accuracy of official documents, the court may, for good cause shown, order that they be treated as presumptively authentic without final certification or permit them to be evidenced by an attested summary with or without final certification.
The trial judge admitted the passports, over Kea's objection, holding that he did not accept the passports as official documents of the United States or a foreign government, but as notations concerning *363 arrivals and departures. However, the notations of arrivals and departures were purportedly made by an agent of the Turkish government. The stamps should have been accompanied by a final certificate in accordance with Mississippi Rule of Evidence 902(3). See Overseas Trust Bank Ltd. v. Poon, 181 A.D.2d 762, 763, 581 N.Y.S.2d 92 (1992) (holding that it was not error for the trial judge to refuse to admit the passport as evidence that defendant could not have been served with process in New York because she had been in Hong Kong. The defendant "offered no attestation or testimonial authentication by the Hong Kong authorities who had affixed the stamps on her passport.").
¶ 16. The passports should not have been admitted to prove that Bob and Lisa were traveling in Turkey at the time witnesses claimed to have seen Bob removing items from his father's home.

CONCLUSION
¶ 17. Because we find error in the trial court's failure to give a two-witness jury instruction and in the trial court's admission of the passports to prove that Bob and Lisa were out of the country, we reverse Kea's conviction and sentence and remand the case for a new trial consistent with this opinion.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF SIMPSON COUNTY IS REVERSED AND REMANDED FOR A NEW TRIAL CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SIMPSON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] Bob Key admitted that he had several aliases. His passport, which was admitted into evidence, was issued to Robert Keys. Bob also testified that his name was Robert John Kea.
[2] Bob admitted in his testimony that he had a number of prior convictions, including one for making a false statement on a passport. Bob also testified at trial that his name was Robert John Kea. However, his passport was issued to Robert Key, then "corrected" to reflect the name Robert Keys.