ROBERTS, J.,
for the Court:
¶ 1. The Simpson County Circuit Court sua sponte scheduled a hearing to determine which party was entitled to receive personal property that had been maintained as evidence by the Simpson County Sheriffs Department. The personal property — primarily collectibles and other items that had been obtained overseas— had been delivered to the Simpson County Sheriffs Department by Robert Keys. Robert’s widow, Lisa Keys, and his father, Albert Kea, each claimed that they were entitled to receive all of the property at issue. State Farm claimed that it was entitled to receive a portion of the property at issue, as it had paid Robert for certain specific items incident to loss claims that Robert had filed in 1992 and/or 1994. Ultimately, the circuit court found that State Farm was to receive a portion of the property at issue, and Lisa was to receive the remainder of the property at issue. Aggrieved, Albert appeals and raises the following five issues: (1) the circuit court did not have jurisdiction to disburse the property at issue; (2) the circuit court erred when it entered an order, nunc pro tunc, reviving Lisa’s replevin claim after Lisa had voluntarily dismissed it; (3) the circuit court erred when it did not conclude that Lisa was collaterally estopped from asserting her claim that she was entitled to possession of the property at issue; (4) the circuit court erred when it ignored his equitable interest in the property at issue; and (5) the circuit court’s decision to award Lisa some of the property at issue was not supported by the evidence. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. This case concerns a circuit court’s distribution of personal property, but it is the unforeseen result of Albert’s 2004 lawsuit against Entergy Corporation to recover damages after his home was damaged by a fire in 1998. Albert claimed a number of collectible items were destroyed in that fire.[1] However, Albert’s son, Robert Keys,[2] came forward and testified that *403 many of those personal items were not destroyed in the fire. According to Robert, those personal items were in Robert’s home in Colorado. Albert’s lawsuit against Entergy was dismissed, and Albert was indicted for perjury.
¶ 3. At the request of the district attorney for Simpson County, Robert delivered the collectibles to the Simpson County Sheriffs Department, where they were kept as evidence against Albert. Albert was eventually convicted. The Simpson County Circuit Court ordered Keith Lewis, the sheriff of Simpson County, to continue to hold the collectibles while Albert’s appeal was pending.
¶ 4. Before Albert’s appeal could be resolved, Robert’s estranged wife, Lisa,[3] filed a pleading styled as a “petition to intervene and declaration of replevin.” Lisa requested that the circuit court give her the collectibles in Sheriff Lewis’s custody.[4] However, Lisa later voluntarily dismissed her pleading without prejudice. At that time, there was no pleading before the circuit court regarding possession of the collectibles in Sheriff Lewis’s custody.
¶ 5. On April 11, 2008, Janice Clemons, a claim representative for State Farm’s Special Investigative Unit, wrote a letter to the circuit court and explained that State Farm had an interest in some of the collectibles in Sheriff Lewis’s custody. According to Clemons, Robert had previously filed claims in which Robert stated that some of the collectibles in Sheriff Lewis’s custody had been stolen.[5] Clemons reasoned that because State Farm had paid Robert for the loss of those collectibles, the circuit court should release them to State Farm. The circuit judge responded to Clemons’s letter and stated, among other things, that he could not simply tender those collectibles to State Farm based on Clemons’s letter.
¶ 6. On July 1, 2008, this Court reversed Albert’s perjury conviction. Kea v. State, 986 So.2d 358 (Miss.Ct.App.2008). This Court’s decision was based on the failure “to instruct the jury in accordance with the two-witness rule as required in perjury cases.” Id. at 361 (¶ 10). This Court also held that Robert’s and Lisa’s passports should not have been admitted into evidence to prove that Robert and Lisa “were traveling in Turkey at the time witnesses claimed to have seen [Robert] removing items from [Albert’s] home.” Id. at 363 (¶ 16). Albert was never retried for perjury.
¶ 7. On September 9, 2008, the circuit court sua sponte notified Albert, Lisa, and State' Farm that it intended to release the collectibles in Sheriff Lewis’s custody. The circuit court also informed Albert, Lisa, and State Farm that it would conduct a hearing to determine which parties should receive the collectibles.
¶ 8. On October 6, 2008, State Farm filed a pleading styled as a “petition for intervention and for replevin of certain items of the personal property.” One week later, *404 attorney Kimberly Howland filed an entry of appearance on Lisa’s behalf. Within the same filing, Howland provided notice that Lisa intended to assert her claim that she was entitled to all of the collectibles.
¶9. On October 17, 2008, Lisa, Albert, and State Farm went before the circuit court for a hearing. The circuit court overruled Lisa’s objection to State Farm’s petition to intervene. At the hearing, Lisa argued that Mississippi lacked jurisdiction over the seized property. Lisa also argued that the seized property should be delivered to Colorado so that it could be distributed with the rest of Robert’s estate. State Farm claimed that argument was inconsistent with Lisa’s effort to resurrect her replevin claim. At the hearing, Lisa offered the circuit court copies of the pleading in the Colorado estate proceedings.
¶ 10. On December 18, 2009, the parties went back before the circuit court for the second day of the two-day trial. State Farm’s attorney reminded the circuit court of the events that had transpired. The circuit court had allowed State Farm to intervene, but it had not ruled on State Farm’s claim. The items State Farm sought had been obtained, so Clemons could resume her testimony on cross-examination. State Farm (and maybe Albert) had yet to argue that Lisa lacked standing because she had dismissed her replevin claim and had not taken steps to resurrect her claim. Lisa argued that the circuit court did not have jurisdiction to conduct the hearing because of the Colorado estate proceedings. Lisa’s lawyer informed the circuit court that the estate proceedings had closed.
¶ 11. Cross-examination of Clemons continued. Lisa testified after Clemons.[6] Albert testified after Lisa. Suffice it to say, they both claimed that they owned the collectibles. Additional testimony, as necessary, will be discussed below in an analysis.
¶ 12. Ultimately, the circuit court awarded State Farm: (1) the mosaic picture, (2) the ivory whale tooth with scrimshaw carvings, (8) the ivory walrus tusk with scrimshaw carvings, and (4) the glass “fish piece.” The total approximate value of those items was $9,550. The circuit court awarded Lisa the remaining collectibles. The circuit court did not award Albert any of the collectibles. Furthermore, the circuit court entered an order reinstating Lisa’s replevin claim nunc pro tunc as though Lisa’s replevin claim had never been dismissed. Albert appeals.
ANALYSIS
I. JURISDICTION BASED ON LISA’S PETITION
¶ 13. Albert claims Lisa’s petition was insufficient to convey jurisdiction over the distribution of the collectibles. Albert’s argument is centered on the concept that Lisa’s initial pleading was not a proper replevin claim in that it did not meet the requirements set forth in Mississippi Code Annotated section 11-37-101 (Rev. 2002). Specifically, Albert argues that Lisa’s pleading was insufficient because it did not adequately describe the collectibles as required by Mississippi Code Annotated section ll-37-101(a). Albert further argues that Lisa’s pleading was inadequate because it did not list the total value of the collectibles as required by Mississippi Code Annotated section ll-37-101(b). According to Albert, because Lisa’s pleading *405 was inadequate, the circuit court did not have jurisdiction to distribute the collectibles.
¶ 14. First and foremost, it is essential to consider that the proceedings which led to this appeal were not replevin proceedings. There was no allegation that the circuit court wrongfully took the collectibles at issue or that the circuit court was wrongfully in possession of them. See Miss.Code Ann. § ll-37-101(e) (requiring that a replevin complaint include an allegation that a “defendant wrongfully took and detains or wrongfully detains” the property). Lisa correctly argues that the collectibles were in the circuit court’s possession in custodia legis.
¶ 15. “Property seized under a search warrant is an exercise of the police power of the [s]tate, and the [s]tate has the authority to keep and maintain control of the property until it is no longer needed in a criminal prosecution or investigation.” Newman v. Stuart, 597 So.2d 609, 614 (Miss.1992). “While the property is thus seized, it is under the lawful custody of the ... court having jurisdiction of the criminal prosecution in which the property is material evidence.” Id. (citation omitted). The collectibles were not seized pursuant to a search warrant, but they were still in the lawful custody of the circuit court. Robert voluntarily delivered the collectibles from his home in Colorado to the Simpson County District Attorney incident to Albert’s prosecution for perjury. Sheriff Lewis maintained possession of the collectibles while Albert awaited trial. After Albert was convicted, the circuit court ordered Sheriff Lewis to maintain possession of the collectibles while Albert’s appeal was pending. After Albert successfully appealed his conviction, the circuit court sought to release the collectibles to either Lisa, Albert, or State Farm.
¶ 16. “When seized property is no longer needed for criminal prosecution by the [Sjtate, it should be restored to its lawful owner. If there is no conflict as to ownership, the court having custody of the property ordinarily directs its release to the owner.” Newman, 597 So.2d at 614. Clearly, there was a conflict as to ownership [of the property] in this case. “[I]f there is a dispute as to ownership ... this is an entirely civil proceeding in which the [Sjtate has no interest, and the property is held until the question of ownership has been determined by a civil action in a court of competent jurisdiction.” Id. at 614-15.
¶ 17. Regarding the appropriate procedure for disbursement of property in which there is a dispute as to ownership, the Mississippi Supreme Court has stated as follows:
The appropriate procedure would have been for [the law-enforcement authority maintaining the property], once [it] served no further purpose in a criminal investigation or prosecution, to make a motion in the justice court for authority to release it ..., and give [any interested parties] reasonable notice of such application and an opportunity to be heard. If there was no conflict or objection to the motion, it would have been proper for the justice court to release it to its lawful owner....
Id. at 615. Accordingly, the proper means to initiate a hearing for the disbursement of the collectibles at issue would have been for the Simpson County Sheriffs Department to file a motion with the circuit court requesting the circuit court’s leave to release the collectibles. That procedure was not followed. Instead, the circuit court sua sponte initiated the proceedings after repeated requests for the collectibles from Lisa, Lisa’s mother, and Albert, who had all ignored the circuit court’s admonitions to *406 cease ex parte requests for the collectibles. Although the proper method to initiate a proceeding for the release of property held in custodia legis was not followed, we can detect no fatal error in the proceedings. All interested parties were provided notice of the hearings, and all interested parties had an opportunity to be heard by a fair and impartial judge during the two hearing dates. Accordingly, we find that the circuit court did not lack jurisdiction to disburse the collectibles based on the concept that Lisa’s initial replevin pleading did not confer jurisdiction to the circuit court. “A writ of replevin does not lie for property in cus-todia legis, [where] the property ... was in the legal possession of the sheriff.” Union Motor Car Co. v. Farmer, 151 Miss. 734, 746, 118 So. 425, 427 (1928). It follows that we find no merit to this issue.
II. REVIVAL OF LISA’S PETITION
¶ 18. Essentially, Albert raises two issues under this single heading. First, Albert claims the circuit court erred when it entered its order nunc pro tunc reviving Lisa’s petition as though it had never been dismissed because Lisa had voluntarily dismissed her initial pleading, and she had never formally moved to reinstate it. Second, Albert argues that Lisa should have been estopped from participating in the circuit court’s sua sponte proceedings because Lisa had previously argued that the circuit court lacked jurisdiction to hear State Farm’s claim because she had dismissed her own claim.
A. The Circuit Court’s Nunc Pro Tunc Order
¶ 19. As stated previously, the circuit court filed an order nunc pro tunc and stated that Lisa’s initial replevin pleading was reinstated as though it had never been dismissed. The circuit court’s order is mere surplusage. As we held in the issue above, the proceedings that led to this appeal were not replevin proceedings. Accordingly, it was unnecessary for the circuit court to reinstate Lisa’s initial pleading nunc pro tunc.
B. Quasi-estoppel
¶ 20. Albert claims that, as set forth in Bailey v. Estate of Kemp, 955 So.2d 777, 782 (¶ 22) (Miss.2007), Lisa may not argue that the circuit court lacked jurisdiction and then subsequently benefit from a contrary position. Albert is correct that Lisa had voluntarily dismissed her initial replevin pleading and argued that the circuit court should not allow State Farm to intervene because — as Lisa reasoned — there was no pending action in which State Farm could intervene. The circuit court disagreed and allowed State Farm to participate.
¶ 21. In Bailey, the Mississippi Supreme Court applied the doctrine of “quasi-estoppel” in the context of a contract interpretation case in which a party was precluded from taking inconsistent positions with respect to a contract. Id. at 779-88 (¶¶ 4-25). The plaintiffs in Bailey filed a claim for breach of contract. The plaintiffs sought to benefit from the contract, but they also sought to repudiate their obligations under that same contract. Id. at 780-82 (¶¶ 4-21). The Bailey court held that the plaintiffs were estopped from seeking to avoid their contractual obligations because they had obtained benefits from the same contract. Id. at 782 (¶ 22). The Bailey court explained that “quasi-estoppel” prevented a party from benefit-ting from a transaction or position and then taking an inconsistent position to avoid the obligations that correspond to those benefits. Id.
¶ 22. Although it is true that Lisa initially argued that the circuit court lacked *407 jurisdiction, Lisa did not benefit from that position. The circuit court disagreed with Lisa and granted State Farm’s request to intervene in the circuit court’s sua sponte initiated proceeding. Having received no benefit from her position since the circuit court had found no merit to her jurisdictional argument, there was no reason that Lisa could not argue that she was entitled to possession of the collectibles. An unsuccessful challenge of a circuit court’s jurisdiction does not preclude a party from defending or pursuing claims or offering evidence if the matter proceeds to trial. If it did, a litigant challenging a trial court’s jurisdiction would be forced to make an all-or-nothing pretrial argument that, if unsuccessful, would effectively exempt him from participating in the subsequent trial. We, therefore, find no merit to this argument.
III. LISA’S BANKRUPTCY
¶ 23. In this issue, Albert claims that the circuit court should have dismissed Lisa’s petition because her claims were contradictory to assertions she had made when she filed for bankruptcy. Albert cross-examined Lisa regarding whether she had included the collectibles among her property when she filed bankruptcy. However, Albert only suggested that her failure to mention the collectibles during her bankruptcy was indicative of the fact that she never owned the collectibles. Alternatively, Albert suggested that Lisa’s failure to include the collectibles among her property when she filed bankruptcy had some bearing on Lisa’s credibility. Albert never argued that Lisa should have been precluded from participating in the circuit court proceedings because she had not included the collectibles among her property when she declared bankruptcy. Thus, Albert raises this issue for the first time on appeal. Issues that were not first presented to the trial court are procedurally barred on appeal. Jones v. Laurel Family Clinic, P.A., 37 So.3d 665, 667 (¶ 6) (Miss.Ct.App.2010). Therefore, we decline to consider Albert’s argument under this heading as it is procedurally barred.
IV. EQUITABLE INTEREST
¶ 24. Albert’s claim under this heading is related to the circuit court’s ore tenus statement at the conclusion of the second hearing date. Specifically, the circuit court stated that “[i]t may very well be that ... Mr. Albert Kea ... has an equitable interest in this property, but this is not a [cjhancery [cjourt.” According to Albert, the circuit court erred when it held that it had no authority to determine his equitable interest in the collectibles.
¶ 25. Albert’s entire argument under this heading is as follows:
Despite a finding that Albert “may very well” have an equitable interest in the property, the [circuit] [cjourt held that it could not adjudicate that interest because it was “not a [cjhancery [cjourt.” That the trial judge was mistaken is so clear as to require little discussion. A circuit court can hear and decide both questions of law and equity in a case where the equitable claim is intertwined with the legal claim. Tyson Breeders, Inc. v. Harrison, 940 So.2d 230, 232-34 (Miss.2006). The trial court, therefore, erred as a matter of law in finding that it could not adjudicate [Albert’s] equitable claim to the property.
¶ 26. Simply because the circuit court stated that Albert “may very well” have an equitable interest in the property does not mean that the circuit court stated that Albert should have been awarded the collectibles. Naturally, “may” must also imply “may not.” In other words, the circuit court did not definitively state that Albert *408 did have an equitable interest in the property. More importantly, simply because the circuit court stated that Albert “may very well” have an equitable interest in the collectibles does not mean that Albert asserted an equitable interest in the collectibles. In fact, Albert never argued that he had an equitable interest in the collectibles. Accordingly, Albert is procedurally barred from asserting an equitable interest on appeal when he did not assert an equitable interest before the circuit court. Cooper Tire & Rubber Co. v. Striplin ex rel. Striplin, 652 So.2d 1102, 1104 (Miss.1995).
V. WEIGHT OF THE EVIDENCE
¶ 27. Albert claims that the evidence does not support the circuit court’s decision to award any of the property to Lisa. Because Albert’s argument challenges the weight of the evidence and the factual determinations made by the trial judge as the sole trier of fact in a bench trial, the standard of review for such factual determinations is “the substantial[-]evidence standard.” Ervin ex rel. Wrongful Death Beneficiaries v. Delta Reg'l Med. Ctr., 55 So.3d 190, 192 (¶ 9) (Miss.Ct.App.2010). “A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor,” and “his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence.” Id. at 193. The circuit court’s findings will not be disturbed unless we conclude that the circuit court “abused [its] discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.” Id. The circuit court “sitting in a bench trial as the trier of fact, has sole authority for determining the credibility of the witnesses.” Id. at 194 (¶ 15). “A finding is ‘clearly erroneous’ when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.” UHS-Qualicare, Inc. v. Gulf Coast Cmty. Hosp., Inc., 525 So.2d 746, 754 (Miss.1987) (citation omitted).
¶ 28. At the outset of this analysis, we note that Albert does not claim the circuit court erred when it awarded four collectibles to State Farm. Albert focuses his attention on the collectibles the circuit court awarded to Lisa. Aside from the pocket watch, Albert does not relate his arguments to any individual collectible that the circuit court awarded to Lisa. Regarding the pocket watch, Albert notes that Lisa did not produce a receipt which adequately demonstrated that Lisa had purchased it. Along with the other collectibles, Robert delivered the pocket watch to the Simpson County Sheriffs Department at the Simpson County District Attorney’s request. Clearly, the pocket watch was in Robert’s possession before Robert tendered it to authorities. Furthermore, Robert died prior to the proceedings that led to this appeal. Although Lisa was estranged from Robert, they never divorced. Additionally, Lisa persuasively notes that it is unlikely that anyone would be able to present a receipt for the purchase of a pocket watch that was not only manufactured in 1901, but was also a family heirloom that Robert did not acquire by purchase. Finally, it is noteworthy that neither Lisa nor Albert produced a receipt or other documentation that would indicate that the pocket watch had been purchased. Thus, we find no manifest error in the circuit court’s decision to award the pocket watch to Lisa.
¶ 29. Regarding the other collectibles that the circuit court disbursed to Lisa, we can find no clear or manifest error in the circuit court’s decision. Lisa produced receipts for fourteen of the twen *409 ty collectibles that remained after the circuit court awarded four collectibles to State Farm. Although Albert introduced receipts regarding some of the collectibles, all of the receipts that Albert introduced indicated that those collectibles were purchased by either Robert or Lisa. Albert argued that Robert and/or Lisa purchased those collectibles on Albert’s behalf, but there was no evidence that Albert had ever given Robert or Lisa any money for that purpose. Albert draws our attention to a letter that Robert sent to Albert during July 2002. In that letter, Robert discussed replacing certain items that had been destroyed when Albert’s home burned. Be that as it may, that letter never indicated that Robert had actually purchased any collectibles on Albert’s behalf. Furthermore, that letter never indicates that Robert was tendering or planned to tender any collectibles to Albert.
¶ 30. Moreover, as mentioned above, Robert brought all of the collectibles to the Simpson County Sheriff’s Department at the district attorney’s request. Before Robert brought the collectibles to Simpson County, they had been in Robert’s home in Colorado. Albert did not introduce any cancelled checks, money orders, cashier’s checks, or other documentary proof regarding ownership of any of the collectibles. Lisa testified that Albert never gave her or Robert money to purchase any of the collectibles. Lisa also testified that, incident to the Colorado proceedings regarding Robert’s estate, Lisa received all of Robert’s property as his only heir. Finally, Lisa testified that she and Robert owned all of the collectibles. Based on the evidence before the circuit court, we find no clear or manifest error in the circuit court’s decision. It follows that we find no merit to this issue.
¶ 31. THE JUDGMENT OF THE SIMPSON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, ISHEE, MAXWELL AND RUSSELL, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. BARNES, J., NOT PARTICIPATING.

. The personal property consisted of the following twenty-four items: (1) an Armani jester figurine, (2) a Jiminy Cricket figurine, (3) two prism balls, (4) three David Scheuner lithographs, (5) a Millisiori plate, (6) two Royal Doulton "Nurse Bunnykins” figurines, (7) a Royal Doulton "Moor Flame” figurine, (8) a Royal Doulton toucan figurine, (9) a Royal Doulton polar bear figurine, (10) a Royal Doulton "Balloon Seller” figurine, (11) an elephant’s tusk with engraved silver-cap pieces, (12) a whale's tooth with scrimshaw carvings, (13) a walrus tusk with scrimshaw carvings, (14) a Moorcraft florian ware vase, (15) a gingerbread lace clock, (16) a gold pocket watch, (17) a walnut pocket watch stand, (18) a scarf, (19) a "glass fish piece,” and (20) a mosaic picture.

. Robert allegedly had a number of aliases, which might explain why he had a different surname than his father.

. Lisa left Robert in 2006. They never divorced.

. Robert died on November 15, 2006. He reportedly shot himself while attempting to evade capture by federal law-enforcement officers.

. State Farm had previously paid Robert for the alleged theft of the following collectibles: (1) the gold pocket watch, (2) the walnut pocket watch stand, (3) the mosaic picture, (4) the ivory whale’s tooth with scrimshaw carvings, (5) the ivory walrus tooth with scrimshaw carvings, (6) the elephant tusk with silver-cap pieces, and (7) the gingerbread lace clock. During the hearing, State Farm clarified that, because it could not find sufficient documentation to support its claims for the elephant tusk or the gingerbread lace clock, it was dropping its claims for those collectibles.

. During Lisa's testimony, Albert "moved for a protective order” on the basis that he had tendered discovery to Lisa, and she had not responded. The circuit court denied Albert’s "motion for a protective order.”